SAMUEL LYON v. WILLIAM C. DENISON ET AL.

*Corporations—Stock—Execution.*

"Stock issued by an association organized under How. Stat. chapter 188, for "yachting, hunting, fishing, boating, rowing, and other lawful sporting purposes," is *not* subject to levy and sale on execution under How. Stat. § 7697, authorizing the sale on execution of the share or interest of a stockholder in any bank, insurance company, or any other *joint-stock company,* incorporated under the laws of this State.

Appeal from Kent. (Burch, J.) Argued April 11, 1890. Decided May 2, 1890.

Bill to declare the transfer of stock in an association organized under How. Stat. chapter 188, for yachting and hunting purposes, void, and to direct the association to issue a certificate for said stock to complainant, who purchased the same at execution sale, etc. Complainant appeals from decree dismissing his bill. Decree affirmed. The facts are stated in the opinion.

*Reuben Hatch,* for complainant, contended:

1. How. Stat. § 7697, subjects the interest of a stockholder in any joint-stock company, incorporated under or authorized to be created by any law of this State, to seizure on execution, and

the members of the Pottawatomie Club are such stockholders. The provisions of this section are broad enough to cover any corporation in which the interest of the corporators is represented by stock. The words "joint-stock company," as used in this section, are synonymous with the word "corporation;" citing *Blair v. Compton*, 33 Mich. 414.

*Norris & Norris* and *Fletcher & Wanty*, for defendants, contended:

1. At common law corporate stocks were not seizable on execution; citing *Blair v. Compton*, 33 Mich. 423; *Van Norman v. Circuit Judge*, 45 Id. 208; and complainant's right to levy on this stock depends wholly on How. Stat. § 7697.

2. How. Stat. chapter 188, under which defendant is organized, makes no provision for capital stock, so that if there be any it exists by virtue of the agreement of the members and the by-laws of the club. The certificate of stock issued provides that its ownership shall not entitle the holder to the privileges of club membership, unless duly elected a member. It necessarily follows that this club is not a "joint stock company," but rather a social organization, and, being such, its stock cannot be seized on execution. The remedy is statutory, and not to be enlarged by construction; citing *Van Norman v. Circuit Judge*, 45 Mich. 211.

LONG, J. The bill in this cause states, substantially:

"1. That on July 17, 1889, the complainant recovered judgment before Thomas Walsh, Esq., one of the justices of the peace of the city of Grand Rapids, against William C. Denison, in an action of *assumpsit*, for $127.34 damages, and $3 costs of suit; that, upon showing made on oath of complainant to the satisfaction of said justice, execution was ordered to be issued forthwith on said judgment, which execution was so issued by said justice on July 17, 1889, directed to any constable of said county, and was in the usual form; and that on July 19, 1889, the said constable levied said execution upon one share of the capital stock of the Pottawatomie Club, represented by certificate No. 9, issued to said William C. Denison.

"2. That the Pottawatomie Club aforesaid is, and was at the time of said levy, a corporation or joint-stock company, within the meaning of How. Stat. § 7697, existing under the laws of this State, and organized under and by virtue of chapter 188, How. Stat.

"3. That said officer made said levy by leaving a copy of said execution, certified by him, with Charles F. Kusterer, then treasurer of said Pottawatomie Club.

"4. That said constable, having given due notice of the sale of said stock at public vendue, by notices signed by him, and put up on July 24, 1889, at three public places in the city of Grand Rapids aforesaid, where the said stock was levied upon, advertising the same for sale at public vendue to the highest bidder, at the outer front door of Court Block, so called, on Lyon street, in the city of Grand Rapids aforesaid, on July 31, 1889, at 2 o'clock in the afternoon, on said day, at the place aforesaid, offered said share of stock for sale at public vendue to the highest bidder, and that, said complainant being the highest bidder, the said stock was struck off and sold to him by said constable for the sum of one dollar, that being the highest sum bid therefor.

"5. That on August 6, 1889, a copy of said execution, and the return of said constable thereon, certified by said constable, was left with Charles F. Kusterer, treasurer of said Pottawatomie Club, and the officer whose duty it was to keep a record of the transfer of shares, by Reuben Hatch, attorney for said complainant, at the office of said treasurer, in the city of Grand Rapids aforesaid. Reuben Hatch, as attorney for said complainant, then and there demanded of said Charles F. Kusterer, for said complainant, a certificate of the share so bought by him at the said constable's sale; the said Reuben Hatch offering to pay the fees thereof, and for recording the transfer of said certificate to said complainant, which the said Charles F. Kusterer, as treasurer of said Pottawatomie Club, then and there refused.

"6. That on August 8, 1889, the said Reuben Hatch, as attorney for said complainant, left with Mark Norris, secretary of said Pottawatomie Club, another copy of said execution, and return thereon, certified by said constable, and demanded the certificate of said share of stock so bought by said complainant, at the same time offering to pay the fees therefor, and for recording the transfer, which the said Mark Norris, as secretary of the said club, refused.

"7. That the return of said constable indorsed upon said execution, a certified copy of which was indorsed upon the copies of said execution so left with said Charles F. Kusterer, treasurer of the said club, and with Mark

Norris, secretary of the said club, was in words and figures following, to wit:

"'I do hereby certify and return that on July 31, A. D. 1889, at 2 o'clock P. M., I sold at the outer front door of "Court Block," so called, on Lyon street, in the city of Grand Rapids, Michigan, at public vendue, one share of the capital stock of the Pottawatomie Club, represented by certificate No. 9, issued to William C. Denison, the defendant within named, being the same stock levied upon by me by virtue of the within writ, to Samuel Lyon, plaintiff within named, for the sum of one dollar, that being the highest sum bid therefor, and he being the highest bidder; having given due public notice of said sale as required by law, by advertisement signed by me, and put up at three public places in the city of Grand Rapids aforesaid, where said stock was levied upon, on July 24, A. D. 1889.

"'J. C. PITKIN, Constable.'

"That the levy upon said stock was indorsed upon said original execution in words and figures following, to wit:

"'July 19, 1889.

"'The within execution levied upon one share of the capital stock of the Pottawatomie Club, represented by certificate No. 9, the property of William C. Denison, the defendant within named.

"'J. C. PITKIN, Constable.'

"A certified copy of which was also indorsed upon said certified copies of said executions so served as aforesaid upon the said Charles F. Kusterer, treasurer, and Mark Norris, secretary, of the said Pottawatomie Club.

"8. That on the day following said levy said Charles F. Kusterer, as treasurer of said Pottawatomie Club, delivered to said constable a certificate in words and figures following, to wit:

"'I, Charles F. Kusterer, treasurer of the Pottawatomie Club, a corporation organized under and by virtue of chapter 188 of Howell's Statutes, and the officer of said club appointed to keep a record of the shares of the stockholders therein, do hereby certify that on July 19, 1889, at the hour of noon (at which time there was served on me a certified copy of an execution issued by Thomas Walsh, justice of the peace, in favor of Samuel Lyon, and against the goods and chattels of William C. Denison), said Denison appeared on the books of said club to be the holder and owner of one share of the stock of said club, and that a copy of the certificate of stock issued to said Denison is annexed hereto.

"'And I do further certify that on the same day, and prior to

the service on me of said execution, one Lavello A. Denison noti-
fied me that said stock had been purchased by him, and said stock
certificate assigned and delivered to him, on July 10, 1889.

"'CHARLES F. KUSTERER,
"'Treasurer of the Pottawatomie Club.

"'July 19, 1889.'

"COPY OF CERTIFICATE.

"'No. 9.   1 share.

"'The Pottawatomie Club of Grand Rapids, Michigan.

"'This certifies that William C. Denison is entitled to one share,
of the par value of one hundred dollars each, of the capital stock
of the Pottawatomie Club.   This certificate may be transferred on
the books of the treasurer of the club, who is transfer agent, to
any person, on the surrender of this certificate, properly indorsed;
but the ownership of said stock shall not entitle the person owning
the same to any of the privileges of the club, unless such person
be duly elected a member of said club.   The club has a lien on
this stock for all unpaid dues and assessments.   One hundred dol-
lars have been paid on each share of stock represented by this
certificate.

"'*Grand Rapids, August* 17, 1887.

"'E. S. HOLMES, President.
"'N. FRED AVERY, Treasurer.'

"That at the time of said levy your orator had no
knowledge of the pretended transfer of said stock to said
Lavello A. Denison.

"9. That at the time of said levy the capital stock of
said Pottawatomie Club was divided into shares, and cer-
tificates thereof had been previously issued to the mem-
bers or stockholders of said club; that the stock so levied
upon and sold was at the time of said levy owned by the
said William C. Denison; that the said William C. Deni-
son appeared to be the owner thereof on the books of
the said club, and that no transfer of the same from said
William C. Denison to any other person had been entered
on the books of said club so as to show the names of the
parties by and to whom the same was transferred, the
number and designation of the shares, or the date of the
transfer, nor in any other manner; that, as your orator
is informed and believes, at the time of said levy the said
Charles F. Kusterer, who was the transfer officer of said
club, and kept a record of the stock and transfers thereof,
had received no notice whatever from said William C.
Denison, or from any other person, of any transfer of
said stock from William C. Denison to the said Lavello

A. Denison, neither had the said Mark Norris, as secretary of said club, received notice, at the time of said levy, of any transfer of said stock from said William C. Denison to Lavello A. Denison.

"10. That the said Lavello A. Denison is the son of the said William C. Denison, and was at the time of said levy, and of the pretended transfer of said stock from the said William C. Denison to the said Lavello A. Denison, mentioned in the certificate of Charles F. Kusterer hereinbefore set forth, in the employ of said William C. Denison; that, as your orator is informed and believes, no consideration was ever paid by the said Lavello A. Denison to the said William C. Denison for said stock; and that the pretended transfer of said stock from said William C. Denison to said Lavello A. Denison is fraudulent and void as to your orator, and was made for the purpose, and with the intent on the part of the said William C. Denison and Lavello A. Denison, of defrauding your orator, and defeating collection of said judgment in favor of your orator, and against said William C. Denison.

"11. That said pretended transfer of said stock by said William C. Denison to his said son is, as your orator is informed and believes, merely colorable, and made with a view of protecting the property and effects of the said William C. Denison, and said stock especially, and placing the same beyond the reach of your orator's said judgment, and enabling said William C. Denison to control and enjoy the same.

"12. That your orator is now, by virtue of said constable's sale, and his purchase of said stock thereat, the true and rightful owner of said stock, and entitled to a certificate thereof from the proper officer of the said Pottawatomie Club, and that he was, upon the service of certified copy of said execution, with the return of said constable indorsed thereon, upon Charles F. Kusterer, treasurer of said club, as aforesaid, entitled to a certificate of said stock, and that it was the duty of said treasurer, upon such service, and upon the offer of your orator's said attorney to pay the charges therefor, to have issued to your orator a certificate of said stock as such purchaser; that said stock is worth at least $200; that the attorney of Lavello A. Denison attended said sale, and warned all persons not to bid, and that is one reason why said stock brought so little.

"13. But now, so it is, may it please this honorable court, that the said William C. Denison and Lavello A. A. Denison, combining and confederating together to and with divers other persons as yet unknown to your orator, but whose names when discovered your orator prays may be inserted herein as defendants, and they made parties hereto, with proper and apt words to charge them, how to injure and oppress your orator, the said confederates respectively do refuse to allow to be issued to your orator a certificate of the share of the stock in said club so bought by him at said constable's sale, pretending that before the said levy upon said stock by said constable, under and by virtue of said execution, said William C. Denison assigned and transferred said stock to his said son, Lavello A. Denison, and that the said Lavello A. Denison, by virtue of said transfer and assignment, is a *bona fide* purchaser thereof; *whereas,* your orator expressly charges the truth to be that the said Lavello A. Denison, is not a *bona fide* purchaser of said stock, and that the said assignment and transfer is a mere sham and pretense, in order to cheat and defraud your orator out of the collection of said judgment,—all of which actings, doings, and pretenses of the said confederates are contrary to equity and good conscience, and tend to the manifest wrong, injury, and oppression of your orator.

"In tender consideration whereof, and forasmuch as your orator is remediless in the premises at and by the strict rules of the common law, and is only relievable in a court of equity, where matters of this nature are properly cognizable and relievable," etc.

The bill calls for an answer, the answer on oath being waived, and prays that the pretended assignment and transfer of said stock by said William C. Denison to his said son may be declared void as a fraud upon the rights of the complainant, and that the same may be canceled, and the said club decreed and directed to issue a certificate of the share of stock to the complainant so bought by him at said sale upon his paying the fees therefor, and that William C. Denison and Lavello A. Denison may be enjoined and restrained from selling, assigning, transferring, delivering, negotiating, incumbering, or in

any way or manner disposing of, said stock to any other person, etc. The bill also contains the usual prayer for other and further relief, and bill was duly verified.

The defendant William C. Denison filed a general demurrer to the bill. Defendant Lavello A. Denison appeared and filed his answer, containing a demurrer clause. By consent of parties the cause came on to be heard on the general demurrer of William C. Denison and the answer of Lavello A. Denison, setting up, among other things, that complainant's bill did not make or state such a case as entitled him to the relief prayed, and praying the benefit of a demurrer. The demurrers only were passed upon by the court, who dismissed the bill, with costs, on November 4, 1889. Complainant appeals.

Counsel for defendants, Denison, in this Court contended—

1. That the bill shows no jurisdiction in the justice to render the judgment or to issue the execution.

2. That the stock seized is not subject to levy, even had it not been transferred.

3. That it was equitable assets, and therefore not subject to levy.

4. That complainant ought to have filed his bill to settle the title to his stock before selling it under the execution.

5. That the bill fails to show that complainant's debt was in existence prior to the transfer of the stock, and hence shows no right to maintain this suit.

From the view we take of the case, however, it does not become necessary to discuss but one question, and that is, whether these shares of stock can be sold on execution.

The Pottawatomie Club was organized under chapter 188 of Howell's Statutes. Section 1 provides—

"That any ten or more persons of full age, at least six of whom shall be citizens of this State, who shall desire to associate themselves for yachting, hunting, fish-

ing, boating, rowing, or other lawful sporting purposes, may make, sign, and acknowledge   *   *   *   and file in the office of the Secretary of State   *   *   *   a certificate in writing, in which shall be stated the name or title by which such association shall be known in law," etc.

Section 2 of the act provides that such association shall be a body politic and corporate, and in their corporate name—

"Shall, in law and equity, be capable of taking and receiving real and personal estate, either by purchase, gift, grant, lease, or bargain and sale, devise and bequest, not exceeding $25,000, in the aggregate, for the purpose of their corporation, but for no other purpose; and the same at pleasure grant, bargain, mortgage, sell, or lease for the use of said association; make all needful rules, regulations, and by-laws for the management of its affairs," etc.,—

And appoint officers and agents for the management of its business. The act also provides for succession by the election of officers and a board of directors for the management of its affairs. Section 7 of the act provides that said association shall possess the general powers conferred by, and be subject to the provisions and restrictions of, chapter 55, tit. 10, Rev. Stat. 1846 (How. Stat. chap. 191), so far as the same may be made applicable to associations formed under this act. Section 7, chap. 191, How. Stat., provides that whenever the capital stock of any such corporation is divided into shares, and certificates thereof are issued, such shares may be transferred by indorsement and delivery of the certificates thereof, such indorsement being by the signature of the proprietor or his. attorney or legal representative; but such transfer shall not be valid, except between the parties thereto, until the same shall be so entered on the books of the corporation as to show the names of the parties by and

to whom transferred, the number and designation of the shares, and the date of the transfer.

Section 7697 of Howell's Statutes provides that—

"Any share or interest of a stockholder in any bank, insurance company, or any other joint-stock company, that is or may be incorporated under the authority of or authorized to be created by any law of this State, may be taken in execution, and sold, in the following manner."

It is insisted that the Pottawatomie Club is not a joint-stock company within the meaning of section 7697, above quoted; that the act under which it was incorporated does not provide for the issuing of any certificates of shares of stock; and that the bill does not allege that the club has any property. It is evident that the Legislature, by section 7697, did not intend to limit the right of levy under execution to joint-stock companies as they were known at the common law, as it gives the right to levy upon the shares of stock in any bank, insurance company, or any other joint-stock company. Banks or insurance companies may be, and usually are, corporations, and yet the shares of stock issued by such corporations may be levied upon and sold under the provisions of this statute. A joint-stock company, at the common law, lies midway between a corporation and a copartnership. It is an association of persons for the purpose of business, having a capital stock divided into shares, and governed by articles of association, which prescribe its objects, organization, and procedure, and the rights and liabilities of its members, except that the article cannot release the members from their liability as partners to the creditors of the company. Cook, Stocks, § 504.

There is an essential difference between a joint-stock company as it existed at the common law, and a joint-stock company having extensive statutory powers, con-

ferred upon it by the state within which it is organized.
It is not within the contemplation of the statute under
which the club was organized that it should carry on a
business for profit, but to hold a limited amount of prop-
erty for the purpose for which it was organized, to wit,
"yachting, hunting, fishing, boating, rowing, or other
lawful sporting purposes;" and it is quite evident the
Legislature never intended that its shares of stock, if any
were provided for by its articles of association or by-laws,
should be regarded merely as property to be bartered and
sold like shares of stock in a purely business concern,
and to be treated subject to levy and sale under execu-
tion, within the provisions of section 7697. They are not,
by the terms of the statute, compelled to issue stock in
order to keep up and maintain their corporation. Their
privileges and franchises are to be enjoyed by compliance
with the statute under which they were organized. They
have, however, issued certificates of shares of stock.
Whether this is provided for in their articles or by-laws
is not made to appear by the bill. From an inspection
of this certificate it appears that the same may be trans-
ferred upon the books of the company by a surrender of
the certificate properly indorsed, but it is also provided
that the ownership of such stock shall not entitle the
person owning the same to any of the privileges of the
club, unless such person be duly elected a member of the
club. That is, one holding and owning a share of stock
has none of the rights and privileges of members of the
club, of yachting, hunting, etc. Just what rights one
holding such a certificate as owner might be entitled to,
it is not necessary to determine upon this record. We
are satisfied that the case does not come within the pro-
visions of the statute authorizing the levy and sale of
shares of stock of a bank, insurance company, or any
other joint-stock company.

The decree of the court below sustaining the demurrer must be affirmed, with costs.

The other Justices concurred.