GEORGE A. ASHLEY *vs.* M. J. DOWLING & others.

Worcester.　October 4, 1909. — October 19, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Voluntary Association. Partnership. Co-operative Store. Agency.*

A voluntary unincorporated trading association, made up of persons whose proportions of ownership in the assets are represented by certificates of shares, is a partnership, and is none the less so because the income which may be received by the shareholders is limited by the by-laws to six per cent per annum, with a provision in another by-law for the establishment of a sinking fund, which, if kept intact and regularly increased, in case of the winding up of the association would be distributed among the shareholders.

A voluntary unincorporated trading association was formed for the purpose of carrying on a general country store. By-laws were adopted, which provided among other things for the issuing and transfer of an unlimited number of "shares of stock," each of the par value of $5, for the general conduct of a store business through a salesman under the supervision of an executive committee, for interest on the capital at the rate of six per cent per annum, payable semiannually, for the setting apart of five per cent on the net profits as a sinking fund, and the quarterly payment of the balance of such profits to purchasers as "dividends" in proportion to the amounts of their respective purchases, for the accumulation of uncollected interest or dividends to the credit of the several members of the association, and for the transfer of uncollected dividends on purchases by non-members to the sinking fund, which in case of the winding up of the association would be distributed among the shareholders. *Held,* that the only members of the association were the shareholders, and that the device of distributing the balance of the profits among the purchasers did not make them members of the association.

In an action against representative members of a voluntary unincorporated trading association, to hold them liable as partners for goods sold and delivered to the association by the plaintiff, it appeared that the association, in which the defendants were shareholders, was organized for the purpose of carrying on a general country store, and the by-laws provided for the general conduct of a store business through a salesman under the supervision of an executive committee, that one M., who had represented the association in buying the goods from the plaintiff, was in the employ of the association as salesman when it began business and so continued until it ceased to do business, that before the transactions with the plaintiff he was elected at a regular meeting of the shareholders a

member of the executive committee and the treasurer of the association, and continued to hold these offices without subsequent election, that he did all the buying and issued shares of the association and received the money for them, that the plaintiff, who was doing business under the name of a beef company, previously had dealt with the store for a number of years, and from time to time had taken notes which always were signed in the name of the association by M. as treasurer, and that such notes had been paid, that the account on which the action was brought extended back for a period of three or four years before the time when the store went out of business, and that the plaintiff at no time had given credit to M. but always to the association of which M. was treasurer, that M. was accustomed to buy goods upon credit and to give notes of the association in payment, and that during the whole time that M. had conducted the business no objection was made on the part of any shareholder to the manner in which he was conducting it. A statement of the account on which the plaintiff sued was approved in writing by M. as correct. A judge who heard the case without a jury found that M. had authority to pledge the credit of the store and to give notes. *Held*, that a finding was warranted that M. was empowered in behalf of the association to incur such indebtedness as the ordinary conduct of the business required, and that his authority to execute commercial paper might be inferred from his course of conduct in buying on credit and paying by notes, which must have been with the knowledge and consent of those members who took any interest in the business, that, if the others did not avail themselves of their right of supervision as partners, they could not complain that M. had exceeded his authority after the goods had been purchased from the plaintiff without any knowledge by him of any limitation upon M.'s authority, and that for the plaintiff to recover, it was not necessary for him to show any knowledge of the particular transactions on the part of the defendants.

In an action against representative members of a voluntary unincorporated trading association, formed for the purpose of carrying on a general country store, to hold them liable as partners for goods sold and delivered to the association by the plaintiff, one of the defendants contended that there was not sufficient evidence to support a finding that he was a member of the association. It appeared that the by-laws of the association provided, among other things, for the issuing and transfer of an unlimited number of "shares of stock," each of the par value of $5, for the general conduct of a store business, and for interest on the capital at the rate of six per cent per annum, payable semiannually, and that the defendant in question paid $5 for a share at about the time the store was started. He testified that he never received cash interest on the share but that he might have received it in the way of goods, that he never attended meetings nor received notices of them, that he had no copy of the by-laws, that he "never saw the stock" and did not remember that he ever had a certificate or had forgotten it. *Held*, that the payment for the share of the so called stock was all that was necessary to make this defendant a partner entitled to share in profits and responsible for losses, and that on the question of his liability it was immaterial whether he received a certificate of stock or attended a meeting of the association or had any knowledge as to the business of the store.

CONTRACT, against the defendants and other persons unknown, as copartners doing business at Pepperell under the name of the Knights of Labor Co-operative Store Association. Writ dated May 5, 1908.

The declaration contained three counts.  The first count alleged that the defendants named in the writ were representative members of the association, and that the defendants owed the plaintiff $2,973.90 according to an account annexed, which was as follows:

"Nashua, N. H., Feb. 21, 1908.

Knights of Labor Co-operative Association.

To Nashua Beef Co., Geo. A.
Ashley, Proprietor, Dr.

| | | |
|---|---|---|
| Balance, old account, | $1,204.19 | |
| Interest on $1,400 for four years, | 336.00 | |
| New account, | 1,197.51 | |
| Note, | 250.00 | |
| | | $2,987.70 |
| Credit. | | |
| By 69 Cloths, 20, | | 13.80 |
| | | $2,973.90 " |

The second count was for goods sold and delivered for the same amount.  The third count alleged that the plaintiff had an accounting with the defendants by their manager and agent, George A. Mahoney, and that the defendants by their said agent agreed that the sum of $2,973.90 was due from the defendants to the plaintiff, according to the accounting annexed, which was the same as the account annexed to the first count, with the addition at the bottom : " The amount of this account is correct.  George A. Mahoney."

In the Superior Court the case was heard by *Fox*, J., without a jury.  He made certain findings of fact, which are stated in substance in the opinion, and reported the case for determination by this court.

As to all the defendants, except the defendant Graham, it was agreed that they, as well as many others, owned shares of stock in the association.  The evidence as to the ownership of stock by the defendant Graham is described in the last paragraph of the opinion.

After stating the evidence in regard to Graham's membership, which consisted of the testimony of that defendant himself, the report of the judge proceeded as follows :

" From the above evidence I find that the defendant, Graham, was a member of the association and liable in the same measure as the other defendants.

" The method employed was to credit to the account of each shareholder the amount of his 'interest,' which was paid him upon his demand therefor at the store.

" All of the defendants except Horace B. Robbins and James F. Graham received 'interest' on their holdings from time to time.

" The defendant Robbins allowed his ' interest ' to accumulate in order that he might purchase another share of stock ; and the testimony of the defendant Graham relative to ' interest ' is given above.

" Other than the above there was no evidence that this defendant had ever received any 'interest' or that he had any knowledge of any 'interest' declared or assumed to be payable to him.

" A sinking fund, in accordance with the by-laws, was set aside and deposited in a savings bank, which bank failed, and in the later years no further contributions were made toward such fund.

" The method of business, while Mahoney was treasurer, was as follows : When a person came in and made a purchase, he was given a check representing the purchase, and at the end of six months the checks were returned to the store and counted by the bookkeeper, each customer being credited with the amount sent in ; and when the business was figured and the amount of profit determined, a percentage was declared upon those checks as a dividend to the purchaser.

" Financial reports were made by Mahoney as treasurer to the executive committee from time to time, but towards the end of the business they were not.

" The plaintiff, who was doing business under the name of the Ashley Beef Company, had dealt with the store for a number of years ; and had from time to time taken notes which were always signed ' Knights of Labor Co-operative Store Association, by George A. Mahoney, Treasurer.'

" The account on which he brought suit extended back for a period of not more than three or four years prior to the time

when the store went out of business, and was contracted subsequent to the purchase by the defendants of any stock which they held. At no time had he given credit to Mahoney as an individual but to the association of which he was treasurer.

"At no time after the first year in the history of the business of the association was it conducted on a strictly cash basis. Mahoney was accustomed to buy goods upon credit and to give notes in payment thereof. The plaintiff had, in the course of his business dealings with the association, received notes from time to time, which had been paid.

"During the whole time when Mahoney conducted the business of the store, no objection was made on the part of any shareholder to the manner in which he was conducting the same.

"Upon the foregoing evidence I find that he had authority to pledge the credit of the store and give notes. All the certificates of stock, a copy of one of which is annexed to and made a part of this report, were signed by the members of the executive committee.

"The defendants, other than Graham and Williams, who was not present at the trial, testified that they purchased these shares as an investment with the understanding that they were to receive interest on the amount that they so invested and their share in the sinking fund.

"Art. 8 of the by-laws reads in part as follows: 'on the capital invested interest shall be allowed at the rate of six per cent. per annum.' Because of this language I have used the word 'interest' in this report. It does not seem to me material whether the payments to the shareholders be called 'interest' or 'dividends' nor whether the shareholders under the by-laws were to receive all of the profits or only a part of them.

"My conclusion rests upon the fact that the association was not incorporated and its members were therefore necessarily the principals by whom its debts were contracted.

"At the request of the parties I do not pass upon the question of the amount of the plaintiff's claim, but merely rule that the plaintiff is entitled to recover from all the defendants, and report the case to the Supreme Judicial Court.

"If the ruling is sustained, the case is to go to an auditor for

final judgment merely upon the amount of the plaintiff's claim; otherwise, such entry is to be made as shall seem proper to the Supreme Judicial Court."

The case was submitted on briefs.

*E. H. Vaughan, E. T. Esty & J. Clark, Jr.*, for the plaintiff.

*H. Parker & H. H. Fuller*, for the defendants.

RUGG, J.   This is an action of contract brought against certain persons as partners.   The facts as to the alleged co-partnership are that in 1886 a voluntary trading association was formed under the name of "Knights of Labor Co-operative Store Association" for the purpose of carrying on a general country store.   Certain by-laws were adopted, which provided among other things for the issuance and transfer of an unlimited number of "shares of stock," each of a par value of $5, for the general conduct of a store business through a salesman under the supervision of an executive committee, for interest on the capital at the rate of six per cent per annum, payable semi-annually, for the setting apart of five per cent on the net profits as a sinking fund, and the quarterly payment of the balance of such profits to purchasers as "dividends" in proportion to the amounts of their respective purchases, for accumulation of un-collected interest or dividends to the credit of the several members of the association, and the transfer of uncollected dividends on purchases by non-members to the sinking fund.   Shares were issued from time to time, and regular meetings were held for several years, but none after 1894.   One Mahoney entered the employ of the association as salesman when it began business, and so continued until 1908, when it ceased to do business. In 1891 he was elected at a regular meeting of the stockholders a member of the executive committee and treasurer, and continued without subsequent election to hold these offices until 1908.   He did all the buying and issued, and received money for, stock.   Interest was declared annually to the shareholders, up to the time the store was closed, at the rate of six per cent, save that for four or five years the stockholders voted to pay themselves eight per cent.   Financial reports were made by Mahoney to the executive committee from time to time, except toward the end of the business.   The plaintiff had sold goods to the store, and from time to time took notes, which were always

signed "Knights of Labor Co-operative Store Association, by George A. Mahoney, Treasurer," and which were paid. The indebtedness for which this action is brought was incurred subsequent to the purchase by defendants of any stock they held. All the time after the first year of the business, it was the custom of Mahoney to buy goods on credit, and give notes in payment. No objection was ever made by any stockholder to the method in which Mahoney conducted the business.

A voluntary unincorporated association of individuals for the purpose of conducting business, whose proportions of ownership in the assets are represented by certificates having similarity to shares of stock in a corporation, has repeatedly and uniformly been held to be a partnership. *Tappan* v. *Bailey*, 4 Met. 529. *Hoadley* v. *County Commissioners*, 105 Mass. 519. *Taft* v. *Ward*, 106 Mass. 518. *Edwards* v. *Warren Linoline & Gasoline Works*, 168 Mass. 564, 566. See *Opinion of the Justices*, 196 Mass. 603, 614, 627; *Merchants' National Bank of Cincinnati* v. *Wehrmann*, 202 U. S. 295, 300. The defendants undertake to distinguish the present case from these on several grounds. It is urged that because the income, which might be received by the stockholders, was limited by the by-laws to six per cent, they were creditors and not stockholders. A like provision was in the by-laws of the association under consideration in *Ricker* v. *American Loan & Trust Co.* 140 Mass. 346, but it was nevertheless held to be a copartnership. Moreover, the stockholders varied this rate by increasing it for several years.

There is also here a by-law for the establishment of a sinking fund, but no regulation for its use or ultimate disposition. If this fund had been kept intact and regularly increased, it might have become a substantial sum. Its ownership would have been in the association. Its distribution, in case of the winding up of the association, would have been among the stockholders in the nature of profit sharing.

It is argued that the purchasers of goods were really the persons for whose benefit the business was carried on. But the purchasers were not associated in the enterprise. They had no voice, directly or indirectly, in the management and are not anywhere recognized in the plan of the association as having a proprietory relation to it. They were under no obligation to collect

their so called " dividends " on purchases, and if these were not collected they were not credited on the books of the company to the purchasers, but transferred to the sinking fund, which was in its last analysis for the benefit of the stockholders. The phrase of the by-laws in describing its members as "stockholders " indicates a participation in the fortunes of the venture. Dividends or interest uncollected by the stockholders was carried to their credit on the books, and not transferred to the sinking fund. The device of dividing a large share of the profits among the purchasers was well adapted to advertising the business. It cannot have the effect of making such purchasers members of the association against the language of the by-laws.

It is immaterial, so far as the rights of creditors are concerned, that the by-laws have not in all respects been strictly complied with. The so called stockholders, when they paid in their money, became copartners with the other associates, and subject to the general principles of the law of partnership, both as to rights and liabilities. The members are not exempt from the ordinary rules governing partnerships, because there were a large number of partners, who for their own convenience as to internal management adopted articles of copartnership, which they called by-laws, nor are these regulations without express notice imposed upon those who deal with them on the basis of their apparent and real connection with each other. If persons choose to avail themselves of the advantages of a partnership for business purposes, they cannot escape the responsibilities accompanying such a relation. *Tyrrell* v. *Washburn*, 6 Allen, 466. *Phillips* v. *Blatchford*, 137 Mass. 510, 513. The right of a business partnership to buy upon credit and make notes for goods purchased cannot be doubted. The act of one partner in this respect within the apparent scope of the business binds his copartners. It does not appear whether Mahoney was a stockholder, and thus a partner. But he was one of the executive committee, which was charged with general oversight of the affairs of the association, and he conducted the business. If not a partner by reason of membership in the association, he was by some or all of the partners, without objection from any of them, appointed managing agent, and served as such for many years. Under familiar principles of the law of agency, he was empowered

in behalf of the copartnership to incur such indebtedness as the ordinary conduct of the business required. Although the authority of an agent to execute commercial paper in the name of his principal must be clearly shown, and may not be implied merely from general authority to do business, *Brown* v. *Parker*, 7 Allen, 337, 339, in the present case it may be inferred from the exercise by Mahoney of buying on credit and paying therefor by notes since the first year of the business, which must have been with the knowledge and consent of those partners who took any interest in the business. If the others did not avail themselves of their rights of supervision as partners, they cannot now complain. It does not appear that any limitation upon Mahoney's authority was known to the plaintiff. The nature of the association was not such as to give warning of limitations upon the liabilities of members or the powers of agents, as in *Volger* v. *Ray*, 131 Mass. 439, and *Ray* v. *Powers*, 134 Mass. 22. It was not necessary to show any knowledge of the particular transaction on the part of the defendants. It is plain that the by-law,* upon which the defendants rely, is regulative merely of the retail trade, and does not purport to govern the conduct of wholesale purchases of stock.

The defendant Graham contends that there was not sufficient evidence to support a finding that he was a member of the association. It appeared from his own testimony that he paid $5 for a share about the time the store was started, and although he never received cash interest on the share, might have received it in way of goods, that he " never saw the stock " and did not remember that he ever had a certificate or had forgotten it, and that he never attended meetings nor received notices of them nor had a copy of the by-laws. The payment for the share of so called stock was all that was necessary to constitute him a partner, entitled to share in profits and responsible for losses. It. is immaterial upon the question of his liability that he may not have received a certificate of stock nor attended a meeting of the

---

* The by-law referred to was as follows : " Cash System. The stock in trade shall be, as far as possible, pure in quality, and the sales made at the prevailing retail price, and the cash system strictly enforced ; provided, that this article shall not be construed as preventing the salesman from exchanging commodities as stock in trade ; but no checks shall be given in exchange."

association nor had any knowledge as to the business of the firm. *Boston & Albany Railroad* v. *Pearson,* 128 Mass. 445, 449.

Under the terms of the report, the case is to be sent to an auditor for the single purpose of determining the amount of the plaintiff's claim, and judgment is to be entered in his favor for the amount so found.

*So ordered.*