HAMMOND *et al. v.* OTWELL *et al.*

Nos. 7647, 7671.  JULY 19, 1930.

*Kelley & Kelley* for plaintiffs.

*A. B. Tollison, Carl Tallant, Wheeler & Kenyon, J. P. Brooke,* and *I. L. Oakes,* for defendants.

HINES, J. W. H. Hammond, J. C. Talbot, C. J. Brannon, Mrs. R. L. Hunter, Ed Martin, and Mrs. Ida Streetman as administratrix of the estate of Mrs. A. L. Glover filed their equitable petition against James A. Otwell, R. E. Hope, R. B. Burress, A. J. Green, R. P. Otwell, R. L. Bagley, Roy E. Strickland, H. L. Hurt, G. W. Heard, Olen E. Merritt, Carl Tallant, T. P. Burress, B. P. Roper, and W. N. Poole Jr. and Claude Groover as executors of W. J. Groover, deceased, in which they made these allegations: The defendants and M. W. Webb are copartners comprising the Peoples Bank. On February 1, 1921, the defendants formed a partnership for the purpose of organizing an unincorporated private bank under written articles of partnership, a copy of which is attached to the petition as an exhibit, stipulating "that there shall be a partnership formed between the parties signing this agreement, which will conduct the business of" a private bank; that the parties subscribing the instrument assent to all of its terms, and agree to pay, within 60 days from the date of signing the same, the sums of money set opposite their names; that the basis of said contract is that the shares shall be divided into $100; and that within a period of 90 days from February 1, 1921, certificates shall be issued to the members, indicating the amounts paid in by them and the amount of the interest of each subscriber in said bank; that the business shall be conducted by a finance committee to be appointed by the subscribers; that each committeeman is to hold at least $100 interest in said bank; that the committee shall elect a cashier and general manager, whose duty it shall be to take charge of the funds belonging to the "partnership thereby formed," and to do a banking business; that the name of the bank thus to be operated under the agreement is to be "Peoples Bank," and it is to be operated at Cumming, Georgia; and that "the time for which this obligation shall remain of force and effect shall be for a period of at least two (2) years from the first day of February, 1921, after which time no individual shareholder will withdraw from said business without giving to the other parties to this contract sixty (60) days notice in

writing of this intention to withdraw; provided that each person hereto shall at all times have the right to sell, transfer, and convey his interest in said private bank to any individual, corporation, or firm who is acceptable to the finance committee in charge of said business as a shareholder in said private bank." The articles of association were signed by M. W. Webb and the defendants to this action and by E. W. Gilstrap and W. A. Robbs, each of them subscribing to $1000 of the capital of said bank.

Said bank is indebted to W. H. Hammond a balance of $6,041.63 on a time certificate dated July 16, 1926; to J. C. Talbot a balance of $1,053.67 on a time certificate dated July 16, 1926, and as salary and for one mare the sum of $585; to C. J. Brannon a balance on a time certificate and deposit account of $239.04, said certificate being for the sum of $210.29, dated July 16, 1926; to Ed Martin on deposit account the sum of $30; to Mrs. R. L. Hunter on deposit account $109.24; and to Mrs. Ida Streetman, administratrix of Mrs. A. L. Glover, $147.78. The certificates were signed by the Peoples Bank by M. W. Webb as president and cashier. Each of said partners comprising said partnership is personally liable to each of petitioners for the above amounts due them. The partnership has failed and refused to pay the same, having been adjudged a bankrupt. The above amounts alleged to be due to each of the petitioners are the amounts due by the Peoples Bank at the time it was closed because of its bankruptcy. Petitioners prayed for judgment against the defendants for the amounts due each of them, and for process. They amended their petition by making, among others, the allegations that they "contend that the bank is a partnership composed of the parties named in the original suit;" that M. W. Webb "contends that it is a partnership composed of himself, his wife, and Mrs. A. J. Webb;" and that "in either event said bank is a partnership, and the assets are first to be applied to its creditors or depositors, because the same is insolvent, as well as the individual partners if composed of said Webb, his wife, and Mrs. A. J. Webb."

In their answer the defendants admitted the execution of the articles of partnership, and that they had each, except W. N. Poole Jr. and Claude Groover as executors of W. J. Groover, signed the articles of partnership in which they subscribed to the capital of this bank; but they alleged that after the execution of this agreement the enterprise was abandoned, their notes given for their sub-

scriptions were surrendered to them in April, 1921, and the partnership agreement was annuled by the mutual agreement of all parties thereto, although it had never been fully organized; that no certificates of membership therein were ever issued to any of them; that M. W. Webb was the sole owner of said bank during all the time it was operated after April 1, 1921, until his wife and others joined with him in a contract by which said bank was run and operated; and that none of these defendants ever had any interest or connection with said bank, or with the operation thereof. Webb filed a separate answer in which he admitted the execution of the agreement, but alleged that before the notes given for such subscriptions became due the Farmers & Merchants Bank, which had been taken over by the superintendent of banks for liquidation, had reorganized, and thereupon all the members of the partnership withdrew, and their notes representing their subscriptions to the capital were surrendered to them, after which Webb was the sole owner of said bank, which he operated in a small way until the Farmers & Merchants Bank was again finally closed, and then upon his own responsibility he continued to operate the Peoples Bank; that the partnership doing business as the Peoples Bank was dissolved by the deaths of subscribers W. A. Robbs, W. J. Groover, and E. W. Gilstrap, on April 18, 1925, May 12, 1926, and March 25, 1927; and that none of the claims of petitioners antedated the dissolution of said partnership by the deaths of these members.

At the trial the plaintiffs amended their petition by alleging that "while the articles of agreement attached to the petition designate the Peoples Bank as a partnership, and the individual signers of the articles of agreement as partners, that in law and in fact it is a joint-stock company; and petitioners therefore allege that the Peoples Bank is a joint-stock company, and the individual signers of said articles of agreement are liable as shareholders." The evidence tended to establish the allegations of the petition. The facts appearing in the answers of the defendants, as above set out, were proved by the evidence introduced by the plaintiffs. The trial judge granted an order of nonsuit as to all of the defendants except M. W. Webb. To this judgment the plaintiffs excepted upon the grounds: (a) that the Peoples Bank under said articles of agreement was not a partnership, but as a matter of law was a joint-stock company, and the death of one of the shareholders in said company would not

operate as a dissolution thereof; (b) that as it was a joint-stock company, each of the defendants having been shareholders therein under their subscription to ten shares of the par value of $100 each, and said bank having been organized upon the basis of said stock subscriptions forming its assets, which organization was effected by the defendants electing its officers and placing its affairs in the hands of its agents for the transaction of the business contemplated by the contract, and defendants having never transferred their shares in said bank, and no notice having been given to plaintiffs of of their retirement from membership in said bank, but on the contrary the defendants having been held out to plaintiffs and other patrons of said bank as being shareholders therein, and plaintiffs having dealt with said bank without any knowledge that the defendants, or any of them, had attempted to retire from the same as shareholders, defendants and each of them are liable to plaintiffs upon the cause of action set out in their petition as amended; (c) the defendants having elected M. W. Webb as president, cashier, and general manager of this bank, and having placed him in charge thereof in each and all of said capacities, and having held him out as their general agent for this purpose, his agency having never been revoked, and no notice of any kind having been given to plaintiffs to the effect that the defendants had revoked his agency, and it appearing from the evidence that his agency had never been revoked, and that he continued to carry on the business of the bank in the same manner and under the same name as originally adopted, the defendants and each of them are liable to the petitioners for the amounts sued for by them; (d) that Webb, as president, cashier, and general manager of said bank, had the authority to bind it and each of the individual shareholders, and the defendants and each of them are liable for all his acts and doings, and are bound by representations made by him as to the connection and liability of such shareholders; (e) that the evidence was sufficient to make out a prima facie case of liability against each and all of the defendants, and to authorize a verdict for each of them in the amount sued for by them respectively.

The question whether a joint-stock company can be legally created in this State by agreement of parties, without legislative action, has been discussed by counsel for the defendants; but in the view which we take of this case we deem it unnecessary to pass upon

this question. The controlling question is whether the articles of association, the substance of which is above set out, created a partnership or a joint-stock company. It is difficult to frame an exact definition of a joint-stock company, one sufficiently comprehensive to embrace every essential element, and sufficiently exclusive to exclude every irrelevant factor. It has been held that at common law joint-stock companies are regarded as partnerships. Spottswood v. Morris, 12 Idaho, 360 (85 Pac. 1094, 6 L. R. A. (N. S.) 1075). It has been said that unincorporated joint-stock companies are governed by the same general principles as are applicable to partnerships. Norwood v. Francis, 25 App. (D. C.) 463 (4 Ann. Cas. 865). It has been said that such companies are partnerships except in form. Robinson v. Smith, 3 Paige (N. Y.), 222 (24 Am. D. 212). It has been held that they are partnerships with some of the powers of corporations. Van Aernan v. Bleistein, 102 N. Y. 360 (7 N. E. 638); In re Hones, 172 N. Y. 575 (65 N .E. 570, 60 L. R. A. 476, 478). But such companies are not entirely controlled by the legal rules and principles which govern ordinary partnerships. Spottswood v. Morris, supra. In a joint-stock company there is no delectus personæ as in an ordinary partnership. Spottswood v. Morris, supra; People v. Wemple, 117 N. Y. 136 (22 N. E. 1046, 6 L. R. A. 303); Oliver's Estate, 136 Pa. 43 (20 Atl. 527, 9 L. R. A. 421, 20 Am. St. R. 894); Carter v. McClure, 98 Tenn. 109 (60 Am. St. R. 842). It has been declared that one distinction between a joint-stock company and a partnership is that the death of a member of the former does not ordinarily dissolve a joint-stock company, whereas it does have that effect in an ordinary partnership. Another distinction is that in a partnership each member speaks and acts as the agent of the firm, while this is not true in a joint-stock company. 20 R. C. L. 1075, § 223. It has been declared that a joint-stock company at common law lies midway between a corporation and a partnership, and partakes of the nature of both. Roller v. Madison, 172 Ky. 693 (189 S. W. 914); Pearson v. Railroads, 196 Mo. 536 (94 S. W. 270); Oliver v. Liverpool &c. Ins. Co., 100 Mass. 531; Lyon v. Denison, 80 Mich. 371 (45 N. W. 358, 8 L. R. A. 358, 361); Cook on Stockholders (2d ed.), § 504; State v. La. &c. R. Co., 196 Mo. 522 (94 S. W. 279); Williams v. U. S. Express Co., 195 Mo. App. 362 (191 S. W. 1087); 38 C. J. 878 (§ 2) B. The changeability of membership or trans-

ferability of shares is óften used as a determining criterion between ordinary partnerships and joint-stock companies. Kaihu Sugar Co. v. Johnstone, 249 Fed. 103. "The fundamental distinction between ordinary partnerships and joint-stock companies is that the partnership consists of a few individuals known to each other, bound together by ties of friendship and mutual confidence, and who therefore are not at liberty, without the consent of all, to retire from the firm and substitute other persons in their places, and the decease of a member works a dissolution of the firm; whereas a joint-stock company consists of a large number of individuals not necessarily or indeed usually acquainted with each other at all, so that it is a matter of comparative indifference whether changes are made among them or not, and consequently the certificates and shares in such associations may be transferred at will, without the consent of other members, and the decease of a member does not work a dissolution of the association or entitle the personal representative to an accounting. In joint-stock companies there is no delectus personæ." 33 C. J. 880 (§ 5), 3.

In view of these fundamental distinctions between ordinary partnerships and joint-stock companies, in which class does the association with which we are dealing fall? The answer to this question is not entirely free from doubt. We can not say that this association consisted of such a large number of individuals as to hold that it falls within the class of joint-stock companies. The articles of association limit the transferability of the shares of the members of the association. In the first place, a member desiring to withdraw from the business must give 60 days notice in writing of his intention to do so. In the second place, a member can only sell, transfer, and convey his interest in the bank to some individual, corporation, or firm who is acceptable to the finance committee in charge of said business, as a shareholder in the bank. Here the right of delectus personæ is reserved to the members composing the association. In joint-stock companies the members have no right to decide what new members shall be admitted; on the other hand the right of delectus personæ is an inherent quality of an ordinary partnership. Kaiku Sugar Co. v. Johnstone, supra; Oakridge Coal Co. v. Rogers, 108 Pa. 147; Ashley v. Dowling, 203 Mass. 311 (89 N. E. 434, 133 Am. St. R. 296). The provision that the shares shall be of the par value of $100, and that certificates

shall be issued to the members, indicating the amount paid and the amount of interest that each subscriber has in the business of the bank, is not conclusive of the fact that the association is a joint-stock company. Such provision is consistent with the formation of a partnership. The shares are issued to indicate the amounts paid in by the members and the amount of interest the subscriber has in the bank. Of course this provision can be looked to in determining the character of the association. Again, the provision that the business shall be conducted by a finance committee to be elected or appointed by the subscribers, and that each subscriber shall be entitled to one vote for each $100 or for each share paid in by him, does not conclusively establish the character of the association as a joint-stock company. It can be looked to in the solution of this question. All of the above provisions are consistent with the view that the association established by this agreement was a partnership and not a joint-stock company. The articles of association expressly declare that it is the purpose of the members signing the same to establish a partnership. Again, the articles of association declare that the committee appointed to conduct the business of the bank shall select a cashier and general manager who shall "be in charge of disbursing the funds belonging to the partnership hereby formed."

In their original petition the plaintiffs allege that the defendants "are all copartners comprising the Peoples Bank." They further allege that "on February 1, 1921, the defendants formed a partnership for the purpose of organizing an unincorporated private bank under written articles of partnership." They again allege that M. W. Webb, one of the subscribers to the articles of association, had the bank and himself adjudged bankrupts, but that none of the other members of the "partnership" are included in said bankruptcy proceedings. They further allege that they "have a common cause of action as creditors and depositors against the defendants as individual partners in said partnership." Again, they allege that "each of said partners comprising the said partnership is personally liable" to each of petitioners in amounts due them, and that "the partnership has failed and refused to pay the same." By an amendment filed on February 26, 1929, they allege that they "contend that the bank is a partnership composed of the parties named in the original suit," and that "Webb contends that it is a

partnership composed of himself, his wife, and Mrs. A. J. Webb," and that "in either event the Peoples Bank is a partnership, and the assets are first to be applied to its creditors and depositors, because the same is insolvent, as well as the individual partners, if composed" of Webb, his wife, and Mrs. A. J. Webb. It was not until November 25, 1929, during the progress of the trial of the case, that petitioners amended their petition and set up the contention that, while the articles of agreement designate said bank as a partnership and the signers thereof as partners, in law and in fact it is a joint-stock company. The petition was sworn to by one of the petitioners. The allegations that the defendants are all co-partners composing the Peoples Bank, and that they formed a partnership for the purpose of organizing an unincorporated bank under written articles of partnership, were not stricken or withdrawn by the plaintiffs. While such allegations standing alone might not conclude the plaintiffs from withdrawing them and alleging that the articles of association constituted the signers a joint-stock company, when taken in connection with the express statements of the articles that the purpose of the signers was to create a partnership, and with other features of the articles of association tending to show the formation of a partnership, we feel justified in taking the petitioners at their word, and in holding this agreement created a partnership and not a joint-stock company. So we are of the opinion that we should construe the articles of agreement as the petitioners construed them. This we do. We hold that under the articles of association a partnership was formed by the defendants for the purpose of conducting a banking business.

■ Having reached the conclusion that the association formed by the defendants under the articles of agreement constituted a partnership, we are next to consider the question whether the death of three of the members of the partnership dissolved it, these deaths occurring prior to the contraction of the debts upon which the plaintiffs sue in this case. Every partnership is dissolved by the death of one of the parties. A dissolution puts an end to all the powers and rights resulting from the partnership. As to third persons, it absolves the partners from all liability for future contracts and transactions, but not for transactions that are past. Civil Code (1910), §§ 3162, 3164. After dissolution, a partner has no power to bind the firm by a new contract, or to revive one already

for any cause extinct, or to renew or continue an existing liability. § 3188. When one of the partners dies, it is not necessary that notice should be given to third persons or to the world of the dissolution of the partnership. *Bass Dry Goods Co.* v. *Granite City Mfg. Co.,* 116 *Ga.* 176 (42 S. E. 415). The death of a partner supplies such notice. So, when the debts sued on in this case were contracted, the partnership doing business as the Peoples Bank had been dissolved by the death of several of its members; and members of the partnership who had no part in creating these debts could not be held liable by reason of their membership in the dissolved partnership.

Applying the principles above ruled, the trial judge did not err in granting a nonsuit as to all the defendants except M. V. Webb.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. All the Justices concur.*