HAIKU SUGAR CO. et al. v. JOHNSTONE.

(Circuit Court of Appeals, Ninth Circuit. April 1, 1918.)

No. 3090.

1. CORPORATIONS ⬤379—PARTNERSHIP—LIABILITY.

Where corporations are by law authorized to form copartnerships, each corporate member of such a firm is liable as a partner to third persons.

2. JOINT-STOCK COMPANIES ⬤8—PARTNERSHIP — DISTINCTION — TRANSFERABILITY OF SHARES.

The changeability of membership or transferability of shares is often used as a determining criterion between ordinary partnerships and joint-stock companies.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Joint-Stock Companies and Associations; Partnership.]

3. CORPORATIONS ⬥379—PARTNERSHIP—MANAGEMENT—CORPORATE MEMBERS.

Where corporations are allowed by law to form ordinary partnerships with other corporations, it is an incident of such right that representatives of the corporate members can for convenience be selected to manage the firm.

4. JOINT-STOCK COMPANIES ⬥10—PARTNERSHIP ⬥224—DISTINCTION BETWEEN PARTNERSHIP AND JOINT-STOCK COMPANY.

In a joint-stock company, the members have no right to decide what new members shall be admitted; on the other hand, the right of delectus personarum is an inherent quality of an ordinary partnership.

5. PARTNERSHIP ⬥264—CHANGEABILITY IN MEMBERSHIP—BY-LAWS.

The provision in the by-laws of a partnership composed of corporations for existence of the association for 45 years, unless sooner terminated by mutual consent, does not show any plan for changeability in the membership, and dissolution would probably be effected through the transfer of any partner's interest.

6. JOINT-STOCK COMPANIES ⬥23—PARTNERSHIP ⬥227—DISTINCTION.

A joint stock company usually consists of a large number of persons between whom there is no special relation of confidence and the retirement or death of a member works no dissolution, while a partnership though it may consist of several is ordinarily made up of members who are drawn to each other by feelings of mutual confidence and no member is at liberty to retire and substitute another.

7. JOINT-STOCK COMPANIES ⬥18—PARTNERSHIP ⬥139—DISTINCTION.

In a joint-stock company, the business is generally managed by directors or other designated officers of the association, and a shareholder as such is without power to contract for the company; whereas, in a partnership, any member may bind the partnership, this being true, though the partnership is composed of corporations.

8. INTERNAL REVENUE ⬥7—INCOME TAXES—PARTNERSHIP.

Under Sess. Laws Hawaii 1903, Act 51, § 1, permitting any two or more corporations organized under the laws of Hawaii to enter into partnership with each other for the transaction of any lawful business, several corporations, by an agreement dated October 30, 1903, formed a partnership, the by-laws of which provided for management by representatives selected by the several partners, who were to represent the partners according to their respective interests. There were no special partners, and there was no partnership capital stock. *Held* that, as the partnership was lawful under the laws of Hawaii, it could not be treated as a joint-stock company, and so subject to taxation under Income Tax Law Oct. 3, 1913, c. 16, 38 Stat. 114, which applies to every corporation, joint-stock company, or association, no matter how created or organized, not including partnerships; but it must be treated as a partnership for purposes of collecting of income taxes.

9. STATUTES ⬥245—TAXATION—CONSTRUCTION.

In the interpretation of statutes levying taxes, it is the established rule not to extend their provisions by implication beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out, and in case of doubt they are to be construed most strongly against the government.

10. INTERNAL REVENUE ⬥38—INCOME TAX—ILLEGAL EXACTIONS—RECOVERY —INTEREST.

Where a collector of internal revenue, acting under Income Tax Law Oct. 3, 1913, illegally collected taxes from a partnership composed of corporations, the members of the firm are entitled to recover the exaction, with interest and costs.

In Error to the District Court of the United States for the Territory of Hawaii; Horace W. Vaughan, Judge.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by the Haiku Sugar Company, the Paia Plantation, the Kalialinui Plantation Company, Limited, the Pulehu Plantation Company, Limited, the Kula Plantation Company, Limited, the Makawao Plantation Company, Limited, and the Kailua Plantation Company, Limited, copartners doing business under the firm name of the Maui Agricultural Company, against Ralph S. Johnstone, executor under the will and of the estate of John F. Haley, late Collector of Internal Revenue for the District of the Territory of Hawaii. There was a judgment for defendant, and plaintiffs bring error. Reversed and remanded, with instructions.

Suit to recover certain moneys paid under protest in September, 1916, as income taxes under the federal Income Tax Law of October 3, 1913 (Act Oct. 3, 1913, c. 16, 38 Stat. 114). Demurrer to the complaint was sustained, and judgment went against the plaintiffs. The facts as alleged are: That the Maui Agricultural Company is made up of several corporations, each of which was incorporated under the laws of Hawaii; that the plaintiffs, since January, 1904, have been copartners under the firm name and style of Maui Agricultural Company, sugar growers of Hawaii; that the partnership has existed under an agreement of partnership, dated October 30, 1903, and adopted by-laws in 1904; that it was intended to be a general partnership, each partner a general partner therein, with unlimited liability upon each of the partners or members for the debts of the partnership; that by the laws of Hawaii (Session Laws of 1903, entitled "An Act Concerning Corporations," approved April 28, 1903; sections 2631 and 2632 of the Revised Laws of 1905; sections 3388 and 3389 of the Revised Laws of Hawaii of 1915) corporations in Hawaii are authorized to enter into general or special partnership with each other; that the general partnership was duly registered, pursuant to the registration law of Hawaii (chapter 28, Session Laws of Hawaii of 1880, re-enacted as chapter 162, Revised Laws of 1905, and chapter 189, Revised Laws of Hawaii, 1915); that under the provisions of the indenture of partnership the several partners or members have definite shares in the capital of the partnership, and that, while the by-laws provided that the respective interests of the partners or members shall be evidenced by a certificate, no stock or shares of stock or certificate of stock in the partnership or company has ever been issued, except as to certificates of the respective interests of the partners or members; that it never was intended that the partnership should have any capital stock, as distinguished from capital assets or working capital, nor has the capital of the partnership, or any share or interest therein, of any of the partners, ever had any par or face value; that it was never intended that the respective shares or interests of the partners in the capital assets of the company should be sold or transferred in any manner, whereby any assignee or transferee could succeed to the rights of the assignor or transferror to continue in the business of the partnership or to carry on the business with the other partners without their consent, and that the shares or interests of the partners in the partnership have never been divisible; that the capital assets consist mainly in the use during the existence of the partnership of the property and rights of the several partners which were contributed by them, respectively, to the partnership as required by the indenture of partnership, and are to revert to the respective partners or members upon the termination of the partnership or company; that the Maui Agricultural Company was never intended to be a corporation, joint-stock company, or association within the provisions of the Corporations Tax Law of August 5, 1909 (Act Aug. 5, 1909, c. 6, 36 Stat. 112), or within the meaning of the Income Tax Law of October 3, 1913; that the company as a partnership has made statements of profits to which its partners would be entitled after the same were divided, and given the names of the partners or members who would be entitled to the same, if distributed in compliance with the act of October 3, 1913, and particularly the fifth proviso of paragraph D of section II of the said act, and made statements to the revenue officials accordingly for the year 1914; that the plaintiffs,

members of the company, have been liable for corporation excise tax and income tax only in their several individual capacities, and have returned statements accordingly for taxes for the years previous to. 1915, showing the respective shares of the profits of the company for the said years, and the profits to which each member would have been entitled if they had been divided; and plaintiffs say they were assessed accordingly and paid the assessment so made, but that in 1916 the revenue authorities took the position that the company was not subject to the special corporation excise tax under the act of August 5, 1909, but was subject to the income tax under the act of October 3, 1913, and that plaintiffs, members of the company, are severally subject to the corporation excise tax for 1909, 1910, 1911, and 1912, inclusive, and to the income tax for 1913, 1914, and 1915, inclusive, in respect to the shares distributed to and received by them, respectively, of the net income of the company in each of the said years, as distinguished from their respective shares in the net income of the company earned and distributed in each of the said years, whether distributed or not.

Smith, Warren & Whitney and Frear, Prosser, Anderson & Marx, all of Honolulu, T. H., for plaintiffs in error.

John W. Preston, U. S. Atty., and Caspar A. Ornbaun, Asst. U. S. Atty., both of San Francisco, Cal., and S. C. Huber, U. S. Atty., and J. J. Banks, Asst. U. S. Atty., both of Honolulu, T. H., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above).   [1-3] The question for decision is whether the Maui Agricultural Company is an organization excepted from the Income Tax Law of 1913, which, besides applying to persons, applies, subject to certain enumerated exceptions, to:

"Every corporation, joint-stock company or association, and every insurance company, organized in the United States, no matter how created or organized, not including partnerships."

It is clear, we think, that the company is not a legally created corporation. It was originally formed in 1903, solely by agreement of its members. The statute of Hawaii (section 1, act 51, Session Laws of Hawaii 1903) permitted any two or more corporations, organized under the laws of Hawaii, to enter into partnership with each other for the transaction of any lawful business; but a partnership formed of corporations is not in itself a corporation. The right given to a corporation to become a member of a partnership pertains to the power of the corporation to gain membership in a partnership, but does not make the aggregation of partners itself a corporation. There may yet be upon a corporation member the liability of a partner as to third persons. Butler v. Am. Toy Co., 46 Conn. 136; Bates on Partnership, § 1; Lindley on Partnership, p. 86. The partnerships into which corporations may enter in Hawaii are general and special. Chapter 70, § 1, Session Laws 1886. In the association in question there were no special partners, nor was there limited liability; nor, indeed, was any attempt made to form any but a general partnership. Strong evidence of this is the fact that the company registered as a general partnership under the law. Chapter 189, Revised Laws of Hawaii 1915.

In so far as intent may serve to determine the character of the agreement made between the parties, the theory of a partnership is reasonable. Fechteler v. Palm Bros. & Co., 133 Fed. 462, 66 C. C. A. 336. The provisions of the agreement are arranged with titles, for example, "Objects of Copartnership," "Term of Partnership," "Dissolution of Partnership," and the second recital of the "Indenture of Partnership" is that the parties "have mutually agreed each with the other to enter into partnership," while the first object stated is that the parties associate themselves together as partners under the firm name and style of the Maui Agricultural Company, and throughout the whole agreement the references are to the parties as partners and to the association as a partnership. After specifying the respective proportionate interest of the several partners, the agreement provides for sharing profits and losses as owners, and for the division in the same proportion of all surplus funds of the company when dissolution is had. Meehan v. Valentine, 145 U. S. 611, 12 Sup. Ct. 972, 36 L. Ed. 835.

But, notwithstanding the intent to form an ordinary partnership, must it be held that the legal effect of the language used by the parties has been to create a joint-stock company rather than a partnership? If it is such, then the lower court should be sustained, and taxation should be upon the income of such legally created joint-stock company. This is the pivotal point in the case, for in making distinction between joint-stock associations and partnerships Congress must have had in mind that there are substantial points of difference between such relationships. It is noticeable that the arrangement under examination lacks the element of changeability of membership or transferability of shares, an element often used as a determining criterion as between ordinary partnerships and joint-stock companies. Bates on Partnership, § 72. Nor has the agreement reference of any kind to indicate any purpose that the interests of members should be transferable; on the contrary, there are evidences of intent that the contract was solely between the parties thereto and no others. Hedge's Appeal, 63 Pa. 273. It is conceded that the provision for the management of the company by a board of managers is such as is frequently a characteristic of a joint-stock company, but this feature is not inconsistent with the right of partners to make their own arrangements for the management of the partnership affairs. If the right to form the ordinary partnership existed, it should follow that representatives of members of the partners could, for convenience, be selected to manage. McAlpine v. Millen, 104 Minn. 289, 116 N. W. 583; Fleming v. Lay, 109 Fed. 952, 48 C. C. A. 748. This would seem to be an inevitable result of the exercise of the right of a corporation to enter a partnership with another corporation.

We find, however, that in the present case the management of the concern is as much like that of an ordinary partnership as possible, considering the fact that the several members are corporations. The members of the board are not chosen at large by a majority vote of unit shares, but each member of the board is a special representative of the particular members of the partnership. To illustrate: It is provided in the by-laws (article IV) that the Haiku Company shall

appoint two managers, the Paia Company three, and the five other companies one jointly. These managers are to represent the respective partners by whom they are appointed, and a vacancy in the board is to be filled by appointment by the particular partner which "such manager represents." It is also provided in the by-laws (article VI) that a quorum at a meeting of the partnership is to consist of a majority of the partners, both in numbers and interest. The by-laws (article 16) also give to the stockholders of each of the corporate members, although not themselves partners, the same rights to inspect and examine the books and records of the partnership, and to investigate into the partnership affairs, as such stockholders have in the several corporate members in which they hold stock.

[4-8] In a joint-stock company the members have no right to decide what new members shall be admitted to the firm; on the other hand, the right of delectus personarum is an inherent quality of the ordinary partnership. Oak Ridge Coal Co. v. Rogers, 108 Pa. 147; Ashley v. Dowling, 203 Mass. 249, 89 N. E. 433. The provision for existence of the association for 45 years, "unless sooner terminated by the mutual consent of the parties hereto," does not show a plan for changeability in the membership. Karrick v. Hannaman, 168 U. S. 328, 18 Sup. Ct. 135, 42 L. Ed. 484. Dissolution would probably be effected through a transfer of any partner's interest, and there would be a liability for the breach, to be compensated in damages. Lindley on Partnership, *230, *231. A joint-stock company often consists of a large number of persons, between whom there is no special relationship of confidence; the retirement or death of a member works no dissolution; while a partnership, although it may consist of several persons; generally is made up of a few, who are drawn to each other by feelings of mutual confidence, and no member is at liberty to retire and substitute another as a partner. In a joint-stock company the business is generally managed by directors or other designated officers of the association, and a shareholder as such is without power to contract for the company; whereas, in a partnership any member may bind the partnership. Where a corporation is a partner, the doctrine of mutual agency may make business administration more intricate, but does not affect the legal question. Mallory v. Hanaur Oil Works, 86 Tenn. 598, 8 S. W. 396; News-Register Co. v. Rockingham Publishing Co., 118 Va. 140, 86 S. E. 874.

Stress is laid upon the provisions of the partnership agreement, wherein what is termed the "capital stock" is divided into 35 shares of interests. It is to be remembered, however, that the company had no nominal or fixed capital stock apart from the capital assets it owned— that is to say, there was no capital stock of a corporation or joint-stock company, divided, as is usually done in corporations or joint-stock companies, into nominal transferable shares of specified par value. When the agreement and by-laws are looked upon as a whole, the capital stock referred to is the capital or capital assets, and reference to the shares or interests is a method used to express the entire proportional indivisible interests of the seven named members of the partnership. These respective interests of the partners were different, as is shown by article II of the by-laws; and as already

indicated in another by-law (article IV), the managers are required to represent the partners in accordance with their respective interests. State v. Cheraw & Chester R. Co., 16 S. C. 524; Goodnow v. Am. Writing Paper Co., 73 N. J. Eq. 692, 69 Atl. 1014.

[9] In conclusion, while the case is not free from doubt, we think that its determination should be had in conformity with the intent of the several members of the association, and that by so resolving it we are accepting the latest expression of the Supreme Court, as announced in Gould v. Gould, 245 U. S. 151, 38 Sup. Ct. 53, 62 L. Ed. ——, where it was said:

"In the interpretation of statutes levying taxes it is the established rule not to extend their provisions by implication beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen."

[10] The judgment of the District Court must be reversed, and the cause remanded, with instructions to enter judgment for plaintiffs for the amount claimed, with interest and costs. Erskine v. Van Arsdale, 15 Wall. 75, 21 L. Ed. 63; Herold v. Shanley, 146 Fed. 20, 76 C. C. A. 478.