## QUARLES v. CITY OF APPLETON (two cases).

(Circuit Court of Appeals, Seventh Circuit. April 30, 1924.)

Nos. 3216, 3217.

1. **Appeal and error ☉═►4—Judgment in action at law by receiver reviewable on writ of error.**

Where a receiver is authorized by the court to bring an action at law to recover a money judgment on an alleged contract, the judgment therein is reviewable only on writ of error, and not by appeal.

2. **Appeal and error ☉═►850(2)—Questions reviewable on trial to court.**

Where, on request of either party in an action tried without a jury, pursuant to Rev. St. § 649 (Comp. St. § 1587), the court makes special findings of fact, whether such findings support the judgment, and the correctness of declarations of law by the court, duly excepted to, are questions reviewable under Rev. St. § 700 (Comp. St. § 1668).

3. **Waters and water courses ☉═►203(5)—City held liable on implied contract for water service.**

A city, having power to contract for water service, which accepted such service from a water company, which was the only source of supply after its franchise contract fixing rates had expired, and without an express contract, on which the parties were unable to agree, held liable on a quantum meruit, and not at the old contract rate.

4. **Municipal corporations ☉═►226—Contract for water made in proprietary capacity.**

In contracting with a water company for a water supply and fire protection, a city acts in a proprietary and not in a governmental capacity.

5. **Courts ☉═►372(2)—Federal court not bound by state decision on question of general law.**

A federal court is not bound to follow the decision of the Supreme Court of a state respecting the liability of a city, where no express contract exists, but the right of recovery is predicated on an asserted liability arising out of the actions of the parties, lawful in and of themselves.

6. **Estoppel ☉═►62(4)—City held estopped by offer in pleading made to obtain injunction.**

A city, which obtained an injunction restraining a water company from withdrawing its service on an allegation that it was ready and willing to pay the reasonable value of such service, is estopped to assume any position inconsistent with such offer after the service has been rendered.

7. **Estoppel ☉═►62(4)—Doctrine of equitable estoppel applies to municipalities.**

Estoppel, as applied to cities, is not limited to instances where the city has entered into an express contract; but the doctrine of equitable estoppel is predicated upon common honesty, and municipalities as well as individuals are affected by it.

8. **Waters and water courses ☉═►203(5)—Measure of city's liability for water service.**

Where a state commission was created with authority to fix reasonable compensation for water service furnished to cities, pending action by such commission, to which both a city and the water company furnishing it service had applied, the measure of the city's liability is the reasonable value of the service rendered and received.

9. **Waters and water courses ☉═►200(1)—City held liable for reasonable value of water service.**

A state commission, duly authorized, on application of a city, fixed the price at which it might acquire the plant of a water company. During more than a year thereafter the city failed to raise the money to pay for

the property, but refused to make any further payment for water. The company continued to furnish water, both for use and for fire protection, which was necessary, as the city had no other source of supply. *Held,* that it was entitled to recover the reasonable value of such service.,

10. **Waters and water courses ⬧═203(5)—Failure of water company to file schedule of rates charged to city held not to bar recovery for water furnished.**

Failure of a water company to file or to include in its schedules the rates charged to a city *held* not to bar recovery of the reasonable value of the service rendered, where the parties were unable to agree on rates and the company applied to a state commission to fix the rates, which was not done.

11. **Courts ⬧═375—State statute, limiting exercise of jurisdiction by state courts, does not affect that of federal courts.**

A state statute providing that no action shall be maintained against a city on any claim until it has been presented to the city council, and that its disallowance by the council shall be final, except that the claimant may appeal to the state circuit court, is a limitation on the exercise of jurisdiction by the state courts, but cannot prevent a claimant, the jurisdictional facts appearing, from invoking the jurisdiction of a federal court to enforce rights against a city.

12. **Pleading ⬧═72—That plaintiff asks for relief to which he is not entitled does not bar all relief.**

That a plaintiff seeks more relief than he is entitled to receive does not bar him of all relief.

Appeal from and in Error to the District Court of the United States for the Eastern District of Wisconsin.

Action at law by Charles B. Quarles, as receiver of the Appleton Waterworks Company, against the city of Appleton. Judgment for defendant, and plaintiff brings error and also appeals. Appeal dismissed, and judgment reversed on writ of error.

Plaintiff brought this action to recover for water and water service by it furnished to defendant for a period beginning November 1, 1904, and ending November 30, 1911. This period is by the declaration divided into two terms, the first from November 1,.1904, to January 30, 1908, covered by the first cause of action. Subsequently by stipulation the complaint was amended, and a second count was included. The amount demanded is $170,000, with interest, less admitted payments of $56,428.33. The disputes arose over transactions between Appleton Waterworks Company and defendant, dating back to November 4, 1881, when the city passed an ordinance, a 20-year franchise, by the terms of which plaintiff agreed to supply water and defendant to pay therefor, a stipulated price. At the expiration of this agreement, both parties were dissatisfied, and no new contract was made.

Present differences arise over the inability of the parties to agree upon any basis whereby the city may discharge its obligation for the water service and fire protection rendered. The positions of the city and defendant have been frequently changed; the plaintiff first asserting that it was not bound by the price fixed in the original franchise, and the city asserting the contrary. Subsequently the city asserted its liability was the reasonable value of the service rendered, while plaintiff demanded a fixed price by it claimed. Later plaintiff again asserted its right to recover on the basis of quantum meruit, and defendant denied any and all liability.

Certain important occurrences demand special reference. When it was discovered that plaintiff and defendant were unable to agree, either to extend the old contract or upon a new one plaintiff offered to sell its property for a stipulated sum, or to make a new contract upon specified terms respecting payment for service. Defendant declined to accept the proposal, and

⬧═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

passed various resolutions declaring its determination to acquire its own waterworks plant, and also consented "that said company may continue to operate the system of waterworks on the terms and the conditions of its present franchise and contract, but that this consent shall not be deemed to be a renewal of said franchise and contract, or a new franchise and contract." This proposal was in turn rejected by plaintiff.

Further negotiations of a similar character were carried on; plaintiff insisting that its service was rendered pursuant to its offer to furnish fire protection and water at a stipulated price per hydrant rental, and defendant asserting that it would pay only the price fixed in the expired franchise until it was able to construct its own plant. Plaintiff presented claims to the city, based upon its alleged contract, and defendant allowed them in part on its theory. Plaintiff appealed from the disallowance of its claim (as required under the charter of the city of Appleton) to the state circuit court, and, as other bills became due, claims were likewise presented and disallowed, or allowed in part, and appeals taken. By stipulation these various appeals were consolidated and tried, with the result that judgment was rendered in plaintiff's favor for the reasonable value of the services rendered.

From this judgment an appeal was taken, and an opinion rendered (Appleton Waterworks Co. v. Appleton, 132 Wis. 563, 113 N. W. 44); which has assumed a large importance in the disposition of the present action. Defendant relies upon it to support the judgment, and it is evident that the District Judge was governed largely by it in the disposition of the case. Plaintiff admits that it is conclusive upon all of the claims by it presented up to November, 1904, and its present action is restricted to the sums by it claimed from such date to the date when the city finally took over the property.

A second date of importance in the history of this controversy is December 30, 1905, at which time the city brought suit to restrain the company from discontinuing service by it threatened in case its demand for payment was not met. In this complaint the city alleged: "The plaintiff is ready and willing, and now offers, to pay to the defendant a reasonable and just compensation for any and all service it has heretofore or may hereafter render to plaintiff for a proper and efficient supply of water through its waterworks system, and has been ready and willing and has offered and tendered to the defendant during all time past as well as in the present to pay and render to the defendant a fair and just compensation for all service in the supply of water for public uses, but that defendant has refused to accept the same;" and it obtained an injunction restraining plaintiff from discontinuing the service.

Plaintiff thereupon answered, asserting: "In its answer the water company set up the ordinance 1881, attaching a copy as an exhibit, and alleging that the same constituted a contract, that said contract expired on November 4, 1901, that the compensation named therein was inadequate, but that nevertheless the company had for a time after the expiration of the contract continued to serve the city and accept the same amount. It then alleged the sending of the communication of February 20, 1904, giving notice that it would charge $1,500 per month; that no response had been made thereto; the presentation of bills at the rate of $1,500 per month; the allowance by the city of $1,019 per month, conditioned upon acceptance thereof in full payment; the pendency of the appeals from the action of the common council; that the company could not accept the amounts appropriated without waiving its claim to a larger amount; that the city refused its consent to acceptance without such waiver; and that the company had been at all times and was ready to furnish service to the city and its inhabitants at reasonable rates."

Upon motion to dissolve the injunction, the court required the city to pay to the company $800 per month and continued the injunction, but provided that such payment was without prejudice to the rights of either party. Thereafter for several years these payments were made but without prejudice to either side to assert or dispute other liability. In January, 1908, a receiver was appointed for the Appleton Waterworks Company by the District Court of the United States for the Eastern District of Wisconsin, and the present plaintiff is a successor to the receiver thus appointed. The order appointing the receiver contained provision for the continued operation of the plant.

The injunctional order above referred to remained in force until November 30, 1907, and in the meantime the Public Utilities Act (Laws 1907, c. 499) for the state of Wisconsin took effect (July 11, 1907), and the water company filed with the Railroad Commission of Wisconsin a declaration surrendering its franchise and accepting an "indeterminate permit" under the provisions of this act. This was done pursuant to an understanding between the parties that, if such "indeterminate permit" was obtained, the city would proceed under the act to acquire plaintiff's property. It attempted so to do, and submitted to the voters a bond issue or other necessary question, and the proposition lost; the vote being a tie. Thereupon the city council directed its legal department to proceed before the commission to demand improvements in the plant, and the water company made a request for a determination of a reasonable rate.

No decision was ever announced by the commission as to a reasonable rate, though several years elapsed, but on May 14, 1910, over two years later, an order was entered declaring the plant and service inadequate, and directing improvements to be made. Thereafter application was made to the judge of the court below for an order fixing the rate of compensation, but the parties entered into further negotiations for settlement through purchase of the plant, and this application was never pressed to a final disposition.

In September, 1910, the city again instituted proceedings before the Wisconsin Commission to purchase the plant as provided for in the Public Utility Act. The commission filed its determination and fixed compensation on December 8, 1910. The city was without cash with which to pay for the property, and though it immediately demanded possession, such request was referred by the receiver to the court, and an order entered directing plaintiff not to turn over the plant until payment was made.

January 4, 1911, the city council passed a resolution refusing to make any further payments for service and to hold the receiver liable as trespasser on the streets. November 29, 1911, the city filed a petition in the lower court, praying that the receiver be directed to turn over the plant upon the payment of the amount fixed by the commission, and an order was so entered. Thereupon the city paid the price fixed by the Wisconsin Commission, and possession was delivered to the city. No payment was ever made by the city for the service rendered from December 8, 1910, to December 1, 1911.

Upon the trial a jury was waived, many of the facts were stipulated, each side presented proposed findings, and the court made certain findings and conclusions favorable to defendant, and judgment was rendered dismissing the complaint. From this judgment an appeal was taken, and a writ of error was also prosecuted.

Elijah N. Zoline, of New York City, for plaintiff in error and appellant.

Jerome R. North, of Green Bay, Wis., for defendant in error and appellee.

Before EVANS and PAGE, Circuit Judges, and LINDLEY, District Judge.

EVAN A. EVANS, Circuit Judge (after stating the facts as above). [1] Upon the record before us it is apparent that review of this judgment must be by a writ of error. The action which culminated in the judgment was one at law, not a suit in equity. It is true the original proceedings were equitable in character, but the receiver appointed in the equity suit sought and obtained leave from the court to bring this action at law to recover a money judgment upon an alleged contract. It follows that, to review such a judgment, a writ of error is necessary. Ana Maria Co. v. Quinones, 254 U. S. 245, 41 Sup. Ct. 110, 65 L. Ed. 246; Oklahoma City v. McMaster, 196 U. S. 529, 25 Sup. Ct.

324, 49 L. Ed. 587; Essgee Co. v. United States, 262 U. S. 152, 43 Sup. Ct. 514, 67 L. Ed. 917.

[2] Respecting the writ of error it is first contended that the record does not permit of the consideration of the various assignments of error, because no question of law is properly presented. The trial was without a jury, and the rule announced in Raymer v. Netherwood, 257 Fed. 284, 168 C. C. A. 368, is invoked to support defendant's position. Without expressly affirming the decision in that case, it is sufficient to say that the record in this instance is sufficient to present several of plaintiff's assignments of error.

At the close of the trial, plaintiff requested the court to make certain specific findings of fact and conclusions of law. Under section 649, Revised Statutes (Comp. St. 1587), the District Judge was not required to make special findings; but he could, if he deemed it advisable, and he did make certain findings, some of which were special, and these findings were duly excepted to. Whether these special findings, together with the pleadings, support the judgment, is a question which calls for our determination. Section 700, Revised Statutes (Comp. St. § 1668). Moreover, plaintiff's request, "that upon the undisputed evidence herein the plaintiff is entitled to recover of the defendant the sum of $113,571.67, with interest on $46,954.17 from the commencement of this action, and interest on the sum of $66,617.50 from the time of the service of the amended complaint in this action, less the sum of $5,034.76, being the taxes for the year 1910, upon said waterworks system, which last-mentioned sum should be applied as a payment as of the 31st day of January, 1911," was a request that the court make declarations of law.

Defendant also requested the court to make special findings of fact, and the court, in concluding that "defendant city had no power to make the contract alleged in the amended complaint, or any contract to pay the reasonable value of the service sued for, either expressly or by implication" duly excepted to, made a declaration of law which is here for review. St. Louis v. Western Union Telegraph Co., 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380.

Passing to the merits of the controversy, it appears that the question of defendant's liability may best be considered from four different viewpoints. In other words, that the period for which recovery is sought (November 1, 1904, to November 30, 1911) may be divided into four terms, the first from November 1, 1904, until December 30, 1905, at which last-named date the city brought its suit and secured an injunction restraining the company from discontinuing service. The second period runs from December 30, 1905, until November 30, 1907, when the injunctional order was vacated. The third runs from November 30, 1907, until December 8, 1910, during all of which time the Public Utility Law was enforced in the state of Wisconsin. The fourth period begins December 8, 1910, and runs to November 30, 1911, during which time no payments were made by the city, and all service was rendered subsequent to the date when the city elected to take over the plant, but during which time it had failed to pay the purchase price which the Wisconsin Commission had fixed as the fair value of the property.

The District Judge planted his decision upon the ruling of the Supreme Court of Wisconsin in Appleton Waterworks Co. v. Appleton, 132 Wis. 563, 113 N. W. 44, stating that:

"The importance of the adjudication, of course, arises out of the substantial identity of the parties, the assertion of rights and liabilities in this case resting upon events later in time, but a part of this long controversy. Whether the decision be viewed to support a defense of res adjudicata, stare decisis, or a ruling upon Wisconsin law which the federal court should accept, it cannot be denied that the views expressed in Judge Timlin's opinion respecting the defendant city's contractual powers under its charter and the state law are in close accord with other adjudications by that court, one in particular, Bridge Co. v Durand, 122 Wis. 85, which most pertinently denies the existence of power either to contract, or directly or indirectly to recognize asserted contracts or obligations made, in nonconformity with prescribed modes. Reeve v. Oshkosh, 33 Wis. 477; Ricketson v. Milwaukee, 105 Wis. 591; Water Company v. Oconto, 105 Wis. 76; Le Feber v. West Allis, 119 Wis. 608; Cawker v. Paving Co., 140 Wis. 25; Hoeppner v. Rhinelander, State v. Railway Co., 151 Wis. 520; Transfer Co. v. Superior, 157 Wis. 520."

On the other hand, counsel for plaintiff insists that this court is not bound to follow the decision in the Wisconsin case, first, because the issues are not the same; second, the Supreme Court merely decided that " 'the contract in question [that of 1881] was renewed by the parties for the years 1902, 1903, and 1904,' and that, 'the parties having failed to agree upon any change in the terms of the written contract contained in the ordinance of November 4, 1881, and the respondent resting under legal duty to furnish the water, the terms of compensation fixed and provided by the written contract required by section 1780a must continue in force and binding upon the parties, at least for and during each annual renewal thereof by the acts of one party in furnishing and the other in receiving the service, in the instant case from November 4th of one year to November 4th of the next year,'" and that all else in the decision was obiter; third, that the decision of the Wisconsin Supreme Court was not an interpretation of a Wisconsin statute, but that such obiter expressions were "but inferences drawn by the court as to the effect under general principles of law of the statutes as construed," and that, "if it be conceded that this court is bound to follow the interpretations put upon the statutes by the state court, it is not bound to adopt its inferences therefrom."

That the decision is not res adjudicata, due to a difference in parties, in evidence, and in issues, is, we think, self-evident. Keokuk & W. R. R. Co. v. Missouri, 152 U. S. 301, 14 Sup. Ct. 592, 38 L. Ed. 450; Zohrlaut v. Mengelberg, 158 Wis. 392, 148 N. W. 314, 149 N. W. 280; Wells on Res Adjudicata, etc., § 3. The contrary is not seriously contended, but respecting the extent and effect of the Wisconsin holding there is a sharp dispute It may be conceded that the effect of the obiter holding is to deny to cities in Wisconsin the power to make express contracts except in the manner designated by the statute. But we are here confronted, not with a liability based upon express contract, but with one which arises out of the conduct and action of the parties respecting a subject-matter which in and of itself

calls for, or at least invites, a rule not applicable to ordinary subjects of contract.

[3] The city of Appleton had no waterworks plant; it could get its supply of water from no source other than plaintiff's. The 20-year contract between the parties, which covered the obligations and fixed the compensation, had expired. The parties could not agree upon a new agreement. It was absolutely necessary that water be furnished the city and its citizens. Plaintiff was not in a position to refuse service. Its moral obligation, and after the state court granted the injunction at the city's request its legal obligation, was to supply water and fire protection to the municipality. Is it conceivable, under these circumstances, that this obligation could be imposed upon plaintiff without a corresponding duty on the part of the city to make adequate compensation therefor? And in the absence of an express contract, this compensation was obviously such sum as would fairly pay for the service rendered. In other words, recovery should be had, if at all, on the basis of quantum meruit.

[4] That the city had authority under its charter and the statutes of Wisconsin to contract for water service is not denied. Section 1780a, Revised Statutes of Wisconsin; Ellinwood v. City of Reedsburg, 91 Wis. 131, 64 N. W. 885. In contracting with the utility for water supply and fire protection, the city was acting in a proprietary and not in a governmental capacity. Flint v. Stone Tracey Co., 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; 3 Dillon on Municipal Corporations (5th Ed.) p. 2134; Kaukauna v. Kaukauna Electric Light Co., 114 Wis. 327, 89 N. W. 542; Piper v. Madison, 140 Wis. 311, 122 N. W. 730, 25 L. R. A. (N. S.) 239, 133 Am. St. Rep. 1078.

Not only did defendant possess the necessary authority to make a contract for water and fire protection, but a valid contract had been executed, and service was rendered for 20 years thereunder, when the dispute which the parties now seek to have settled arose. Plaintiff was therefore lawfully present in the defendant's streets. Its original entry and occupancy arose out of a lawfully granted permit from the city. Necessarily such occupancy was exclusive. Plaintiff had no competitor, and the municipality's needs were urgent and absolute. To have permitted the utility to dictate the terms upon which a renewal of the contract could be had would be as unconscionable as to deny it fair compensation for services which it rendered, and which the exigencies of the situation made absolutely necessary—as unfair and unconscionable as to say that either party was required to accept, like a tenant from year to year, the terms fixed in the old contract.

We have, then, no case of executory contract—no situation where plaintiff is seeking compensation for services rendered pursuant to a contract prohibited by statute, or in violation of any statute. Rather do we find a situation where a utility, rightfully present in a municipality, seeks to recover for services rendered with the knowledge and consent of the defendant, and without which defendant could not exist, and which services were obtainable from no other source.

A stronger case for the application of the rule permitting recovery upon quantum meruit could hardly be found. The federal courts are harmonious in recognizing under these circumstances a liability for the reasonable value of the services rendered. Boise Water Co. v. Boise City, 230 U. S. 84, 33 Sup. Ct. 997, 57 L. Ed. 1400; Chapman v. Douglas Co., 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378; Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659; St. Louis Hay, etc., Co. v. U. S., 191 U. S. 159, 24 Sup. Ct. 47, 48 L. Ed. 130; United States v. Andrews, 207 U. S. 229, 28 Sup. Ct. 100, 52 L. Ed. 185; Crocker v. United States, 240 U. S. 74, 36 Sup. Ct. 245, 60 L. Ed. 533; Laird Norton Yards v. Rochester, 117 Minn. 114, 134 N. W. 644, 41 L. R. A. (N. S.) 473; 3 Dillon, Municipal Corporations (5th Ed.) § 1338.

[5] This court is not bound to follow the decision of the Supreme Court of Wisconsin respecting the liability of the city where no express contract exists, and where recovery is predicated upon an asserted liability arising out of the actions of the parties, lawful in and of themselves. Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; B. & O. Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Pana v. Bowler, 107 U. S. 529, 2 Sup. Ct. 704, 27 L. Ed. 424; Presidio Co. v. Noel Young Bond Co., 212 U. S. 58, 29 Sup. Ct. 237, 53 L. Ed. 402. The local statute, as interpreted by the courts of that state, prescribes the method whereby municipalities may make a valid express contract, and as a general rule will be accepted as the law applicable thereto; but the consequences and the liability of parties arising out of their transactions and dealings, in the absence of an express contract, present a different question, and fall among the general principles and doctrines of commercial jurisprudence, and must be determined in the light of reason and legal analogies, including, of course, the decisions of the courts of the state wherein the controversy arises. Illustrations of this latter rule arise in cases where the city has estopped itself to deny the validity of a contract, as well as in cases where the construction of contracts and other questions of general commercial law are involved.

To reach any other conclusion in cases like the instant one would result in great hardship to municipalities. It would place them at great disadvantage, if not at the mercy of the utility, which alone could furnish the necessity; for, if the city could not obligate itself to pay the reasonable value of the service by the utility furnished, it follows that the utility would be under no duty or obligation to render the service. Such a hopeless condition would of necessity tie the city's hand and force it to submit to the terms of the utility, however harsh or unreasonable.

[6] This conclusion is strengthened when we consider the facts applicable to the second period. There the city obtained from a court of competent jurisdiction an injunction restraining the defendant from withdrawing its service. This relief was sought and obtained upon the representation (heretofore quoted) that the city would pay therefor the reasonable value of such services. Such solemn declaration, made in its pleading as the basis for the injunctional order,

cannot be repudiated, when for two years plaintiff was required to and did render the service in accordance with the order thus obtained from the court by the city. If for no other reason, the city should be estopped to assert any position inconsistent with that taken at the time it secured the relief referred to.

[7] Estoppel is not limited to instances where the city has entered into an express contract which it would be unconscionable for it to repudiate. In fact, estoppel may arise where no contractual relations (express or implied) are involved, as is illustrated in cases involving street boundaries and individuals' improvements. In fact, there is no good reason why (the necessary facts appearing) a municipality should not be prevented from denying a position, relied upon by an adversary, which it has previously asserted. The doctrine of estoppel is predicated upon common honesty, and municipalities as well as individuals are affected by it. No better statement of this rule can be found than that appearing in Eau Claire Dell's Improvement Co. v. Eau Claire, 172 Wis. 240, 179 N. W. 2, where the court said:

"It is now well settled that, as to matters within the scope of their powers and the powers of their officers, such corporations may be estopped upon the same principles and under the same circumstances as natural persons."

The same rule is announced in Wykes v. Water Co. (C. C.) 184 Fed. 752, where the court said:

"That a municipal corporation, equally with a private one, may be estopped from denying the validity of its contract made within the general scope of its powers, although not entered into or carried out in the precise or formal manner required by law, is well established; and especially is this true with reference to a contract relating to its proprietary, as distinguished from its governmental, functions."

See, also, Cunningham v. City of Cleveland, 98 Fed. 657, 39 C. C. A. 211; Rogers v. Burlington, 3 Wall. 654, 18 L. Ed. 79; 10 R. C. L. 709.

And it has been held that where one, in a formal pleading in a court of competent jurisdiction, asserts a position upon which it secures relief, he cannot thereafter in another court and in a different proceeding assert a contrary or inconsistent position. Davis v. Wakelee, 156 U. S. 680, 15 Sup. Ct. 555, 39 L. Ed. 578. And this urge of estoppel is further strengthened by the fact that, during such period when the plaintiff was enjoined from withdrawing its service, the city applied to the body authorized to grant the relief for an order requiring the plaintiff to make improvements which would secure a more adequate fire protection and a more satisfactory water supply, and which necessitated the expenditure of a large sum of money by plaintiff.

[8] After the injunction was dissolved, the city was protected through another instrumentality, the Wisconsin Railroad Rate Commission, which had been created in the meantime by the Wisconsin Legislature. The power to fix rates, to determine the character of service, and to investigate all complaints respecting service, etc., had been delegated to this commission, which had jurisdiction over con-

troversies then existing as well as those which might thereafter arise. Both parties promptly availed themselves of the tribunal thus created— the city seeking to compel plaintiff to expend money in enlarging and bettering its plant, and plaintiff endeavoring to secure a satisfactory rate. Plaintiff went further, and surrendered its corporate charter and accepted "an indeterminate permit," with the understanding that the city should apply to the Wisconsin Commission for a determination of the fair market value of plaintiff's property that it might acquire the property. The citizens of the city of Appleton at this point apparently failed to support the administration, and refused to vote the bonds necessary to proceed with the purchase.

The matter thus remained in status quo for many months, when the city again renewed its efforts to purchase the plant, and, a satisfactory appraisal having been made by the Wisconsin Commission, the city took the necessary steps to acquire the property.

Under these circumstances, we conclude that plaintiff was entitled to compensation during such period, and that such compensation should be the fair and reasonable value of the service rendered. Had the commission completed its investigation of the question such a rate would have been established. During this period the parties could not have contracted, had they been able to agree. Only reasonable rates, such as the commission was authorized to fix and determine, could be charged. Both parties necessarily assumed that the rate when determined by the commission, would be the measure of plaintiff's recovery.

[9] For the fourth period the plaintiff's position seems to us still stronger. It received nothing during this period, and although it was not paid the price fixed by the Wisconsin Commission for its property, and it rendered the service as heretofore, it was denied any relief whatsoever. It should be throughout the entire period allowed a fair and reasonable compensation for the services rendered, and defendant should be permitted to introduce any evidence that bears upon this issue.

[10] Because the utility failed to file or include in its schedules the rates charged to the city, it is contended that no recovery can be had in this action. But what schedule could it file? For nearly six years it and the city had been in hopeless disagreement as to the rate chargeable. Failure to agree upon a basis of compensation was no more chargeable to one party than to the other. Plaintiff did seasonably inform the commission that the charge to the city was in dispute, and asked the commission to fix the rate which the city should pay. This, we think, was a sufficient compliance with the statute. No penalty for failure to file rates can or should be enforced, when the utility was unable to comply with this statutory requirement. Certainly neither party should be permitted to dictate what the terms of the contract should be, and when the parties, as in this case, were unable to agree upon a rate, failure of the utility to include in its schedules the charge thus in dispute should not be construed as such a failure to comply with the statute as forfeited its right to recovery.

[11] It is also contended on behalf of the city that there can be no recovery, because claims were not presented to the common council

and an appeal taken in the manner prescribed by the Wisconsin Statutes. The pertinent sections are:

"Sec. 24. No action shall be maintained by any person against the city, upon any claims or demands of any kind whatsoever, whether arising from contract or otherwise, until such person shall have first presented such claim or demand, duly verified under oath, to the common council for allowance. * * * *

"Sec. 25. The determination of the common council disallowing in whole or in part any claim of any person, shall be final and conclusive, and a perpetual bar to any action in court founded on such claim, except that such person may appeal to the circuit court, as provided in section 27, of this chapter." 2 Laws 1885, c. 441.

These sections were thoroughly considered in Bunker v. Hudson, 122 Wis. 43, 99 N. W. 448, where the court said:

"That the purpose of the Legislature was to take away from the court itself any jurisdiction over the subject-matter of an ordinary action against such municipalities upon the causes of action covered by such charter provisions, and, as a result of that legislative purpose, that the absence of presentation to the council and appeal from its action in the manner specified by the statute went to the jurisdiction of the court over the subject-matter, and could therefore be raised at any time, either by general demurrer or objection to evidence upon the trial."

This decision has frequently been referred to by the Supreme Court of Wisconsin; a late expression being found in Read v. Madison, 162 Wis. 94, 155 N. W. 954, where the court said:

"It would be more correct to speak of the restriction against court action as a prohibition against the exercise of jurisdiction which inheres in the court over the subject-matter of the suit, than to say that it is a denial of such jurisdiction. Certain conditions precedent must exist before the court is permitted to exercise its jurisdiction."

From the foregoing, it is apparent that, if a claimant wishes to invoke the jurisdiction of a state court to determine his right to recover upon an alleged claim, he must proceed as prescribed in sections 24 and 25. But these statutes were not intended to and could not deny to a litigant the right to invoke the jurisdiction of the federal court, the necessary jurisdictional facts, as in this case, appearing. Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Barron v. Burnside, 121 U. S. 186, 7 Sup. Ct. 931, 30 L. Ed. 915; Insurance Co. v. Distilling Co., 182 Fed. 590, 105 C. C. A. 128, 31 L. R. A. (N. S.) 873. Nor can section 24 be invoked and section 25 disregarded. Had plaintiff presented his claim to the common council as required by section 24, he would have made an election of remedies, which would have excluded him from subsequently invoking the jurisdiction of the federal court.

It is finally urged by counsel for defendant that the bill of exceptions contains no evidence showing the reasonable value of the services rendered, and therefore, on the merits, the District Court was justified in dismissing the action. Ignoring the testimony of the witness Orbison, defendant's contention must be rejected, because of the facts that appear relating to the fourth period. Certainly the contract is some evidence of the value of services rendered, which would preclude a dismissal of the second count of the declaration.

[12] Nor can we say that, because plaintiff sought more than it was entitled to receive, no relief can be given.

The appeal in No. 3217 is dismissed, with costs, to be taxed against the appellant.

The judgment in No. 3216 is reversed, with costs, with directions to the court to determine the reasonable value of the services rendered, and to render a judgment accordingly.