**MUENTZER et al. v. LOS ANGELES TRUST & SAVINGS BANK.**

(Circuit Court of Appeals, Seventh Circuit. December 11, 1924.)

No. 3264.

**1. Courts ☞356—Statute. providing for judgment without regard to technical errors held applicable to common-law actions tried without jury.**

Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), directing court to give judgment after examination of record without regard to technical errors, defects, or exceptions, not affecting substantial rights of parties, applies to common-law actions tried by court without jury.

**2. Jury ☞28(1)—Waivers of jury trials should not be discouraged.**

Waivers of jury trials and trial by court should not be discouraged.

**3. Appeal and error ☞850(2)—Where jury waived, court authorized to review evidence on writ of error, though neither findings nor request therefor made.**

Where jury was waived and questions of fact were undisputed, and court was fully apprised of litigant's position and that counsel vigorously opposed adverse ruling, court was authorized, under Judicial Code, § 269, as amended by Act.Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), on writ of error to review evidence, notwithstanding neither findings nor requests for findings were made. The decision in Raymer v. Netherwood, 257 F. 284, 168 C. C. A. 368, is overruled.

**4. Banks and banking ☞114—Evidence held to warrant finding bank ratified act of officer in agreeing to honor drafts.**

Evidence *held* sufficient to warrant finding that ·private bank governed by Burns' Ann. St. Ind. 1914, §§ 3402-3417, ratified act of its vice president in agreeing that bank would honor drafts drawn thereon.

**5. Banks and banking ☞114—Act of bank officer may be ratified· after its commission, as well as authorized beforehand.**

Unsanctioned act of bank officer may be ratified after its commission, as well as authorized beforehand; bank's liability in each case being same.

**6. Banks and banking ☞114—Bank cannot escape liability for acts of its officer, knowledge of which is imputable to bank.**

Bank cannot escape liability for acts of its officer when knowledge of officer's conduct is

imputable to bank, any more than when actual formal notice is given to it.

**7. Appeal and error ☞1011(1)—Circuit Court of Appeals not called on to weigh evidence nor to substitute its conclusion for trial court's.**

Though examination of record is necessary to determine whether it is barren of proof showing or tending to show defendants' liability, Circuit Court of Appeals is not called on to weigh conflicting evidence, nor to substitute its conclusion for that of trial judge.

**8. Bills and notes ☞85—That drafts called for "exchange and collection charges," while bank's agreement to honor drafts did not mention such charges, held not to affect bank's liability.**

That drafts drawn on defendant bank called for "exchange and collection charges," while bank's telegram agreeing to honor drafts did ·not mention such charges, did not relieve bank from liability on drafts, where course of dealing between parties showed that drafts were paid without exchange, especially as, drafts being drawn on and payable at defendants' bank, there would be no exchange.

**9. Bills and notes ☞537(6)—That bank paid many drafts drawn by corporation held sufficient to lull suspicion arising from knowledge that bank officer interested in corporation.**

That bank had promptly paid many drafts drawn by corporation was sufficient to lull any suspicion that holder of draft might have had because of knowledge that bank official who agreed to honor drafts was financially interested in corporation, and, at most, any issue as to holder's being innocent holder was for trial court to determine.

Page, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the District of Indiana.

Action by the Los Angeles Trust & Savings Bank against Joseph I. Muentzer and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Plaintiff paid numerous drafts drawn by the Pinnacle Production Company upon defendants' bank, which were refused payment when later presented tò the drawee. This action, tried without a jury, was to recover the amounts thus paid less certain deductions which were made because of subsequent partial payments by the drawer. No dispute over the amount exists, and all facts are singularly free from controversy.

Defendants' denial of liability is predicated upon their contention that Jenkins, the vice president, was not authorized to bind defendant bank as he attempted to do.

Judgment went to the plaintiff for $33,-763.50, together with interest and costs.

Frank C. Dailey, of Indianapolis, Ind., for plaintiffs in error.

J. Arthur Miller, of Chicago, Ill., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Three questions are presented: (a) In view of the waiver of a jury trial, is the record sufficient to present defendants' assignments of error? (b) Was Jenkins, a nonactive vice president and director, by virtue of his position authorized to obligate the bank in the manner here claimed? (c) Is there evidence other than that showing Jenkins' official connection with the bank tending to show that the bank had notice of Jenkins' assumption of authority?

Relying upon sections 649 and 700 of the Revised Statutes (Comp. St. §§ 1587, 1668), and the construction placed thereon by this court in Raymer v. Netherwood, 257 F. 284, 168 C. C. A. 368, it is first urged that the record does not permit us to review the evidence to ascertain whether any liability on the part of defendants is disclosed.

Neither findings nor requests for findings were made. There appears to have been no motion made by either party at the close of the testimony.

Under the rule announced in Raymer v. Netherwood, supra, this would be fatal to defendants' right to consider the evidence, and we would be limited merely to an examination of the pleadings and the judgment; the sufficiency of the former to support the latter being not a matter of legitimate dispute in this case.

[1] The decision in Raymer v. Netherwood was rendered without our attention having been called to section 269 of the Judicial Code, as amended by Act of February 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246). This section was intended to and did govern the disposition of cases on appeal, whether civil or criminal, legal or equitable, and applies to all actions at law, including those wherein the jury is waived. We see no persuasive reason why this remedial section should not apply to common-law actions tried by the judge without a jury.

[2] Waivers of jury trials usually occur where the facts are particularly free from controversy, and in cases like the present, where the real controversy is one of law. Such waivers lessen expense to the litigants and to the government, expedite the trial of cases, and should not be discouraged.

[3] In the present case it appears that the court was fully apprised of the fact that defendant denied any and all liability. There was no question of the amount of liability if any existed, nor of the bank's organization, its by-laws, etc., nor was there any dispute in reference to the fact that Jenkins, who sent the telegrams extending the film company credit, was the vice president and director of defendant, nor that he sent the telegrams binding the Wabash Bank (so far as he could bind it) to pay the various sums therein designated, nor is there any question but what plaintiff relied upon such telegrams and cashed the drafts by reason thereof. These and other facts being conceded, plaintiff asserted, and defendant denied, liability. Each party sought a judgment—plaintiff for the amount alleged in its declaration, and defendants for a dismissal of the action.

It may be somewhat careless to omit to prepare and file formal motions, just as it is sometimes an oversight to fail to except to rulings in those courts (fortunately not now very numerous) where exceptions are not allowed as a matter of course. But what is the purpose of a formal motion, or of an exception? It is to apprise the court of the litigant's position, that it may, in furtherance of justice, correct such ruling if convinced of its error. Where both parties have fully and fairly presented the evidence, as here, and argued the questions of law fully, it seems particularly appropriate that section 269 of the Judicial Code should be invoked to save litigants from the consequences of an oversight by counsel.

Quite different is the situation where counsel do not make known their position, or where (as in case of instructions to the jury) the court's attention is not directed to its failure to completely cover the issues, or to a misstatement of law or fact. Likewise, an entirely different question is presented when on the trial a question is asked and without objection the answer is given. Finding it unsatisfactory, objection is then made, and the court is asked to strike out the answer. Generally speaking, such rulings cannot be assailed on appeal for want of objection or exception.

But the line of demarcation between such cases and the present is clear. In the instant case the court was fully apprised of the litigant's position, and informed that counsel vigorously opposed an adverse ruling. In the other cases, the court's attention was not called to its error, and no opportunity given to correct the oversight or

mistake. Nor was it informed that counsel felt aggrieved by such ruling.

Moreover, since the decision in Raymer v. Netherwood was announced, this court has held in Operators' Piano Co. v. First Wisconsin Trust Co. (C. C. A.) 283 F. 904, Kokomo Steel Wire Co. v. Republic of France (C. C. A.) 268 F. 917, and Quarles v. City of Appleton (C. C. A.) 299 F. 508, that an assignment of error challenging the sufficiency of the evidence to support any judgment may present a reviewable question of law.

It follows that the decision in Raymer v. Netherwood, supra, is overruled.

[4] Respecting Jenkins' authority to bind the Wabash Bank, it appears that he held 41 per cent. of the stock, was a director and the vice president thereof, and was also interested financially in the Pinnacle Production Company, a corporation engaged in producing motion pictures, and operating in California. The picture company kept an account with plaintiff, and also with defendants' bank.

When the picture company first opened its account with plaintiff, Jenkins, on defendant's stationery, wrote a letter to plaintiff advising it that a part of the account was being carried by defendant, and adding: "We are indeed proud to have this account, and assure you that this bank will take care of any demands of its through your institution. We shall be pleased to exchange with you any ideas or criticism that would expedite service between our respective banks."

Both banks were members of the American Bankers' Association, and used its code. Beginning in October, 1920, and ending in May, 1921, 152 drafts, aggregating $624,500, were drawn by the picture company against the Wabash Bank in favor of the plaintiff.

The practice was for Jenkins to first send a code telegram to plaintiff, as follows: "Abaco Lovebird Hugh Woody Coursing. Wabash Bank, Arthur D. Jenkins."

The word "abaco" indicated the American Bankers' Association Code was being used. The word "lovebird" in such code meant, "we will honor draft of"; "coursing" meant "five thousand dollars."

While some of the telegrams used "conquest," which meant "three thousand dollars," instead of "coursing," there was no misunderstanding or uncertainty as to the meaning of any wire.

All the drafts were honored by the Wabash Bank when presented excepting the last 14 (the ones here in controversy).

When the first 152 drafts were presented and paid, defendant had moneys on deposit belonging to the picture company sufficient to pay them. The last 14 were not honored because of lack of funds.

The Wabash Bank denied all knowledge of the existence or sending of telegrams, and denied the authority of Jenkins to bind it by such telegrams or otherwise.

Jenkins, while an officer and a director of the Wabash Bank, was not one of its active officers.

The Wabash Bank was a copartnership, subject to the regulatory provisions of the Indiana private banking law. Under this statute the bank issued shares of stock, and had officers and directors. The statutes of Indiana covering the business of private banks (sections 3402–3417, Burns' Revised Statutes) provide, among other things, for a minimum capitalization, reports to the auditor of state, the issuance of certificates of stock, for examination by the state, authority to sue and be sued, and for voluntary liquidation.

Article 6 of the articles of copartnership of defendants' bank reads as follows:

"Art. 6. *Names, Residences of Officers and Directors.*—The number of directors of said bank shall be five (5), and there shall be a president, vice president and cashier."

Accepting for the purpose of this argument that the Wabash Bank was not a common-law partnership but a joint-stock company (Haiku Sugar Co. v. Johnstone, 249. F. 103, 161 C. C. A. 155; Hibbs v. Brown, 190 N. Y. 167, 82 N. E. 1108; Appeal of Merchants' Fund Association, 136 Pa. 43, 20 A. 527, 9 L. R. A. 421, 20 Am. St. Rep. 894); and the deduction following therefrom that a member thereof as such possessed no authority to bind his associates as to matters within the scope of the partnership business, we are still confronted by article 6, heretofore quoted.

What significance has this article 6, if it does not recognize greater authority in the officers than exists in stockholders who are *not officers?* What significance can be given to the distinction between directors and officers, if the officers be not recognized as managing officers; and why draw a distinction between the authority of a president and a cashier, and that of the vice president? All three might well have been termed managing officers. The vice presidency is an executive office, and in the absence of any limitation upon his authority,

his action is the action of the bank, provided, of course, such action is within the scope of the bank's business.

[5] But we are not required to rest our decision upon the implied authority of Jenkins arising from the Indiana statutes or from his position as vice president of the bank. There is evidence on which the court could and doubtless did find a ratification of Jenkins' actions by defendants' bank. The unsanctioned act of a bank official may be ratified after its commission, as well as authorized beforehand. In either case, so far as the bank's liability is concerned, the effect is the same.

[6] Nor can the bank escape liability when knowledge of an official's conduct is imputable to it any more than when actual formal notice is given it. The telegrams (156 in number) were transmitted by the Western Union Telegraph Company, which company each month sent its bills therefor to defendants' bank. The bank paid them, and charged the amount therefor to the film company.

More than this, some of the 152 drafts presented and paid by defendants' bank had attached memorandum which read as follows:

"Los Angeles, Cal., Dec. 1, 1920.

"Received from the Los Angeles Trust & Savings Bank five thousand and no/100 dollars, $5,000.00 (duplicate), under telegraphic request from Wabash Bank, Vincennes, Ind., which amount I agree to repay to the Los Angeles Trust & Savings Bank, in case said bank is not reimbursed within a reasonable time; and also agree to adjust any difference in event of error on transmission of telegram.                 Hugh Woody.

"Account of Pinnacle Prod., Inc.

"Identified by H. Woody."

The cashier testified in respect thereto:

"If I had read that piece of paper attached (to the draft) I would have known that the draft was drawn pursuant to telegraphic request."

Eight of the drafts had notices on the "lower left-hand corner" reading:

"Telegram 11/22/20"

"Telegram 11/24/20"

"Telegram 1/8/21"

"Telegram 1/14/21"

"Telegram 1/17/21"

"Wire 2/1/21"

"Wire 2/9"

"Wire 2/25/21"

Defendants' cashier said concerning these notations:

"Those notices do not necessarily mean that the drafts were drawn pursuant to telegraphic requests, yet they might have caused one to investigate, and might have indicated that to my mind."

[7] While an examination of the record is necessary to determine whether the same is barren of all proof showing or tending to show liability on the part of defendants, we are not called upon to weigh conflicting evidence, nor substitute our conclusion for that of the trial judge.

The foregoing evidence justified the court in finding a ratification of Jenkins' action, and we cannot disturb it.

[8] Defendants urge, however, that its liability must, under any circumstances, be denied because the drafts drawn were not in accordance with the terms of the telegram. In other words, the drafts called for "exchange and collection charges," while the telegram made no mention of this item. The 152 drafts which passed between the parties disclosed a course of dealing that cannot be ignored. All were paid without exchange, and these words must be read in the light of such action. Moreover, the draft was drawn on defendants' bank and payable at that bank, hence there could be no exchange. Iowa Bank v. State Bank, 183 Iowa, 1347, 168 N. W. 148, L. R. A. 1918F, 169. Under these circumstances, the words "with exchange and collection charges" were surplusage and of no effect.

[9] It is further argued that plaintiff was not a holder in due course, because, among other things, it knew Jenkins was financially interested in the film company. If this and other facts in any way tended to charge plaintiff with notice of Jenkins' misconduct, or to throw doubt upon his authority to bind the bank, it is offset by the prompt payment of the 152 drafts aggregating over $600,000. These transactions all regularly conducted were sufficient to lull any suspicion that plaintiff might otherwise have entertained. At most, any issue as to plaintiff's being an innocent holder was one for the trial court to determine. It was not one over which there was no conflict.

Other questions we have examined, but do not believe they merit separate and special consideration.

The judgment is affirmed.

PAGE, Circuit Judge, dissents from that portion of the foregoing opinion which sustains the judgment against plaintiffs in error.